MARY SWEENEY *vs.* HENRY DAHL.

Cumberland.   Opinion, November 10, 1943.

134

*Charles A. Bartlett,* for the plaintiff.

*Elton H. Thompson,*

*Walter F. Murrell,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MURCHIE, J., dissenting.

CHAPMAN, J.   The case comes to this Court upon exceptions filed to rulings and final decision of the presiding Justice of the Superior Court. The action of forcible entry and detainer originated in the South Portland Municipal Court and went to the Superior Court upon appeal, where it was submitted to the presiding Justice, sitting without a jury, on an agreed statement of facts with right of exceptions reserved.

The facts essential to the consideration of the case, as they appear in the agreed statement, made a part of the bill of exceptions, are as follows:

The defendant, as a tenant at will, occupied premises consisting of house and garage. The owner leased the premises to the plaintiff, who brought action of forcible entry and detainer for possession of the premises against the tenant, without notice of the lease to the tenant, to enable him to vacate the premises before suit was brought.

It does not appear from the agreed statement that the defendant had knowledge of the lease. The plaintiff claimed that

the tenant, by reason of the termination of the tenancy alone, became subject to an action of forcible entry and detainer for the possession of the premises. The Justice ruled that the lease terminated the tenancy and that notice to the tenant of the lease was not necessary for the prosecution of the action and gave judgment to the plaintiff for possession of the premises and for damages to be assessed by the Clerk of Courts.

The essential allegation in the plaintiff's declaration is that the defendant—

"disseized the said Plaintiff of her lands and tenements" . . . "and then and there and still does forcibly and unlawfully refuse to quit the same."

Authority for the complaint as set forth is found in the first clause of Sec. 1, Chap. 108 of the Revised Statutes of 1930, which reads as follows:

"Sec. 1. Forcible Entry and Detainer, against whom maintained. Process of forcible entry and detainer may be maintained against a disseizor who has not acquired any claim by possession and improvement;"

So much of the clause as refers to claim by possession and improvement does not affect the consideration of the instant case. The second clause in the section provides that the action may be maintained—

"against a tenant holding under a written lease or contract, or person holding under such tenant, at the expiration or forfeiture of the term, without notice, if commenced within seven days from the expiration or forfeiture of the term;"

And a third clause provides that the action may be maintained—

"against a tenant at will, whose tenancy has been terminated as provided in the following section."

The following section provides that —

"Tenancies at will may be determined by either party, by thirty days' notice in writing for that purpose, given to the other party, and not otherwise save by mutual consent, . . . ."

It is to be noted that Sec. 1, as worded, makes the process available in two classes of cases: The one applying exclusively to situations existing between landloards and tenants and the other to a withholding of possession by a disseizor, irrespective of whether the disseizor's possession originated in a tenancy or otherwise.

The first clause under which the action was brought makes no mention of tenancy, and if it is within that clause it is not necessary that the person against whom the action is brought be a tenant. *Baker* v. *Cooper,* 57 Me., 388, 390. The essential element is that he be a disseizor. Lacking this element the clause does not apply. *Holding Co.* v. *Bangor Veritas,* 131 Me., 421, 163 A., 655. The clause under which the action was brought is therefore independent of the two clauses following and takes no meaning from them. *Woodman* v. *Ranger,* 30 Me., 180; *Eveleth* v. *Gill,* 97 Me., 315, 54 A., 756. We, however refer to the three clauses inasmuch as we believe there has been a confusion by reason of the grouping of the two classes of cases in one section, and it is necessary to distinguish in adjudicated cases when the Court is referring to the statutory notice necessary to terminate a tenancy by will of the parties, as provided in the last clause of the section, and when it is referring to a notice to the tenant after the termination of tenancy by operation of law, a disregard of which notice will constitute him a disseizor and make the action of forcible entry and detainer available against him. A termination of a tenancy

at will by alienation of the premises is by operation of law and not by will of the parties. *Howard* v. *Merriam*, 5 Cush., 562, 574; *Seavey* v. *Cloudman*, 90 Me., 536, 38 A., 540.

The substance of the accusation in the declaration is that the defendant was a disseizor. It is made in the words of the statute and the question to be decided is not merely whether the tenancy was terminated, but whether the tenant, by reason of the termination of his tenancy by the act of his landlord, was made a disseizor and subject to the action without notice of the same whereby he would have been able to vacate the premises before suit was brought.

The plaintiff must bring his case within the statute and his allegation. *Eveleth* v. *Gill*, supra. The Court said:

> "It follows under the general law of pleading that the plaintiff in such a process should allege in his declaration the facts declared by the statute to be an occasion where the process may be used."

So far as the question is raised as to the effectiveness of the lease in terminating the tenancy of the defendant, the Justice was correct in his ruling. A deed or lease from the owner to a third party will terminate a tenancy at will, and the Court will not inquire as to the purpose of the conveyance. *Rancourt* v. *Nichols*, 139 Me., 339, 31 A. (2d), 410, and cases therein cited. But this is not to say that the conveyance by the owner makes a disseizor of the tenant.

Were the facts set forth in the agreed statement, viz., that the owner alienated the premises without notice of the same to the tenant and without evidence of knowledge of the same on the part of the tenant, sufficient to maintain her allegation that the defendant disseized her? Another way of asking the question is: Did the tenant become a disseizor by the act of another person, over which act he had no control and of which he had no knowledge?

If a term used in the statute has a legal meaning it is presumed that the Legislature attached that meaning to the same. Endlich on the Interpretation of Statutes, Sec. 74; *Merchants Bank* v. *Cook*, 4 Pick., 405, 411.

The term "disseizor" is strictly a legal term and carries a wrongful import. Lord Coke said:

"A disseizor is where one enters intending to usurp the possession and to oust another of his freehold." . . . and, "Or if a man interveneth into lands of his own wrong and take the profits his words to hold it at the will of the owner cannot qualify his wrong, but he is a disseizor." Co. Lit., 277.

Mr. Kent said:

"Every disseizin is a trespass, but every trespass is not a disseizin. A manifest intention to oust the real owner must clearly appear, in order to raise an act which may be only a trespass to the bad eminence of disseizin." 4 Kent, 11th ed., 487.

18 C. J., 1284, says:

'The clearest and most comprehensive definition of a disseizin perhaps, is an actual, visible, and exclusive appropriation of land, commenced and continued under a claim, of right, either under an openly avowed claim, or under a constructive claim arising from the acts and circumstances attending the appropriation to hold the land against him who was seized."

In *William* v. *Thomas*, 12 East, 141, disseizin was defined as —

"the putting out of a man out of seisin, and ever implieth a wrong."

Our own Court said in *Stetson* v. *Veazie*, 11 Me., 408, 410: "for a disseizin is of itself a wrong."

That the term "disseizor," as contained in the statute, is to be given its common law meaning, is stated in *Reed* v. *Elwell*, 46 Me., 270, 279, where the Court said:

"The disseizin contemplated by this statute, is not a disseizin which exists only at the election of a party, for the purpose of trying his title, but a disseizin at common law."

And again in *Dyer* v. *Chick*, 52 Me., 350, 354, the Court adopted the common law meaning when it said:

"Disseizin is a wrongful putting out of him that is seized of a freehold. Co. Lit., 277."

The clause of the statute now under consideration existed in the same terms, at the respective dates of these two cases, except that the present statute says,—

"Process of forcible entry and detainer may be maintained . . . . ",

whereas the earlier statute said,—

"Process of forcible entry and detainer may be commenced . . . ".

That the Legislature intended to attach to the term "disseizor" the meaning above indicated is in harmony with the designation of the form of the action to be used. It is true that the Legislature has defined the use of the action of forcible entry and detainer and likewise has defined the procedure, but it is to be presumed that it had in mind the nature and general scope of the action and intended to give it such import as is not taken away by the terms of the statute. Endlich on the Interpretation of Statutes, Sec. 127. It no doubt selected this form of action, with the changes made in its procedure, as an appropriate remedy against one who wrongfully withholds possession from the one rightfully entitled to the same.

The action of forcible entry and detainer was originally a quasi criminal process, and, while it is now civil in its aspect, it has retained its highly tortious character. In an action of tort a tort must be alleged and proved, and to constitute a tort there must be a wrong done. 62 C. J., Torts, Sec. 17; *Heywood* v. *Tillson*, 75 Me., 225, 236, 237, 46 Am. Rep. 373.

In *Eveleth* v. *Gill*, supra, Judge Emery spoke as follows:

"The summary process of forcible entry and detainer at common law was a criminal, or quasi criminal, process and was only allowed where the entry and detainer were with force, the strong hand. The legislature of this state has devised a process of the same name, but now purely civil in form and nature, for the cases specified in the statute. It follows under the general law of pleading that the plaintiff in such a process should allege in his declaration the facts declared by the statute to be an occasion where the process may be used. Thus it was said by this court in *Treat* v. *Bent*, 51 Maine, 478, 'This process of forcible entry and detainer is one created and regulated by the statutes, and in order to be maintained, must come clearly within their provisions.' "

*Gilbert* v. *Gerrity*, 108 Me., 258, 80 A., 704.
*Karahalies* v. *Dukais*, 108 Me., 527, 81 A., 1011.

The Legislative intent in a statute must primarily be ascertained from the language thereof and not from conjecture. In other words, the Court will first seek to find the Legislative intention from words, phrases and sentences which make up the subject matter of the statute. If the meaning of the language is plain the Court will look no further; it is interpreted to mean exactly what it says. Crawford's Statutory Construction, Sec. 164.

*Estabrook* v. *Steward Read Co.*, 129 Me., 178, 151 A., 141.
*Adams Express Co.* v. *Kentucky*, 238 U. S., 190, 199, 35

S. Ct. 824, 59 L. Ed., 1267, L. R. A. 1916 C, 273, Ann. Cas. 1915D, 1167.

In view of the generally accepted meaning of the language of the statute we would feel justified in interpreting the clause under which the action is brought without further consideration, except that we believe there has been, in some quarters, a mis-interpretation of some of the adjudicated cases.

In our own state and in the state of Massachusetts, which has had a statute which, although differently worded, is of the same general purpose as the Maine Statute, the Courts have several times held that a conveyance of property will terminate a tenancy and have held that, in such case, the notice which is required to terminate a tenancy by the will of the landlord is not necessary before bringing forcible entry and detainer against the tenant. And in some of the cases the language of the Court has been such that it might appear that the Court had held that *no* notice was necessary to the tenant; but in each case a careful examination will show that the Court was referring only to the statutory notice necessary to terminate the tenancy by will of the parties.

In the case of *Seavey* v. *Cloudman*, supra, which was an action of trespass *quare clausum* by the tenant against a representative of a grantee of the landlord for entry after the conveyance, the Court held that the tenancy was terminated by the conveyance and that notice was not necessary to effect the termination; but the Court stated in its opinion that the tenant had been given notice of the conveyance and notified to vacate, and that the issue before the Court was whether the tenant was entitled to the notice provided for in the statute to the effect that —

"Tenancies at will may be determined by either party, by thirty days' notice in writing for that purpose, given to the other party, and not otherwise save by mutual consent," . . . .

The decision was that the tenant was not entitled to that notice. It is not to be interpreted as holding that knowledge of the conveyance need not be brought home to the tenant before he could be treated as a disseizor. The opinion by Judge Savage cited the case of *Howard* v. *Merriam,* supra, and adopted the reasoning and the language of Chief Justice Shaw, who said:

"When therefore it is thus determined by operation of law it is determined by its own limitation without notice."

But Judge Shaw also said in his opinion:

"the estate at will was determined by act of law; and the defendant then became a tenant at sufferance only. *By the notice of that lease for years, and the entry of the lessee for years, and demand of possession by him,* the defendant's right of possession ceased;" (Italics ours) .

The case of *Karahalies* v. *Dukais,* supra, was an action of forcible entry and detainer in which the Court held that the plaintiff had not stated a case under the statute, quoting from *Treat* v. *Bent*:

"This process of forcible entry and detainer is one created and regulated by the statutes, and, in order to be maintained, must come clearly within their provisions."

The question now before us, therefore, was not in issue, but the Court, in that part of its opinion wherein it said that forcible entry and detainer is the proper form of action against a tenant whose tenancy has been terminated by alienation by the landlord, might seem to indicate that the action could be brought without notice to the tenant; but the Court had prefaced this statement by saying in its outline of the case that a written notice of the alienation and demand for possession had been given to the tenant who had refused to vacate.

The case of *Bennett* v. *Casavant,* 129 Me., 123, 150 A., 319,

was an action of forcible entry and detainer, as the opinion states, against a "disseizor." The opinion was brief and it held that the conveyance by the landlord terminated the tenancy at will. But it appears from the opinion that previous to bringing the action of forcible entry and detainer, not only did the tenant have actual knowledge of the lease, but had brought an action against the owner and the lessee to prevent the lease from taking effect. Thus, in all three cases referred to, the tenant had actual notice of the conveyance and it cannot be said that the Court ruled that forcible entry and detainer could be brought without knowledge being brought to him of the termination of his tenancy.

"Every opinion must be read in the light of the facts then presented." *Swan* v. *Justices of the Superior Court,* 222 Mass., 542, 545, 111 N. E., 386, 388.

In the English case of *Lewis, et als* v. *Baird,* 13 East, 210 (1808) , in which a conveyance was made by the owner, Lord Ellenborough said:

"After the lessor had put the defendant into possession, he could not, without a demand of the possession again and a refusal by the defendant, or some wrongful act by him to determine his lawful possession, treat the defendant as a wrong-doer and trespasser, as he assumes to do by his declaration in ejectment."

In the early case of *Rising, et al.* v. *Stannard,* 17 Mass., 282 (1821) , the Court held that a tenant whose tenancy had been terminated by alienation of the premises by the owner, without notice of the alienation, was not a trespasser. It said at p. 287:

"It may be fairly inferred from these principles, that when an estate at will is determined by an event not within the knowledge of the tenant, his holding over will not amount

to a trespass. Suppose, for example, that the estate at will is determined by the death of the lessor in a distant Country, or by his conveyance of the land, of which the tenant can by no possibility have notice at the time of such death or conveyance; it would hardly be contended that the tenant, by holding over, becomes a trespasser. For as the law allows him a reasonable time to remove, after notice given him to quit, he cannot be bound to quit without notice."

And the Court quoted Blackstone:

"If a man makes a lease at will and dies, the estate at will is thereby determined. But if the tenant continueth possession, he is a tenant at sufferance. This estate may be destroyed, whenever the true owner shall make an actual entry on the lands, and oust the tenant; for before entry he cannot maintain an action of trespass against the tenant by sufferance, as he might against a stranger; and the reason is because the tenant being once in by a lawful title, the law (which presumes no wrong in any man) will suppose him to continue upon a title equally lawful; unless the owner of the land, by some public and avowed act, such as entry is, will declare his continuance to be tortious."

Several of the later Massachusetts cases, like the Maine cases that we have cited, might be mis-interpreted.

In *Kinsley* v. *Ames,* 2 Met., 29, the owner of the property made conveyance and the grantee notified the tenant to vacate. Upon entry thereafter the grantee was forcibly resisted and the Court held that the summary process could be maintained. The opinion by Chief Justice Shaw stated that the defendant was not entitled to notice, but it is apparent that the notice referred to in the opinion was the statutory notice to terminate a tenancy by will of the parties, as the issue raised

was upon the claim of the defendant that he was entitled to three months' notice as provided in the statute for the termination of a tenancy by will of the parties.

In the case of *Benedict, et al* v. *Morse*, 10 Met., 223, conveyance was made by the owner and a notice of the conveyance given to the tenant. The Court in this case stated that no notice to the tenant was necessary, but it stated in the opinion that the issue was as to —

> "whether the defendant was tenant at will of the estate occupied by him, and, as such, entitled to three months' notice to quit, before this process could be legally commenced."

The Court cited cases in support of its decision and in each such case stated as a part of the facts that notice of the conveyance had been given to the tenant previous to the bringing of the action.

In the case of *Howard* v. *Merriam,* supra, Chief Justice Shaw reviewed many cases and he stated that a tenancy at will is terminated by a conveyance by the owner, but the case shows that notice in writing had been given to the tenant of the conveyance; and Judge Shaw referred to the notice and the demand for possession as an element in defeating the right of possession by the tenant. That the finding was to this effect is cited in 28 L. R. A., 99n.

All question, however, as to what the Massachusetts Court intended was settled by Chief Justice Shaw in his opinion in *Furlong* v. *Leary,* 8 Cush., 409, in which case he passed directly upon the question that we have before us and said:

> "But it is found as a fact, in the present case, that the defendant had no notice of the lease of Kempton to the plaintiff, until he was served with process under this complaint; we think, therefore, that the complaint was prematurely brought. It is a rule, founded on the plainest

principles of equity and fair dealing, that where a right of action depends on a fact peculiarly within the knowledge of the plaintiff, and which the other party may not be presumed to know, and does not in fact know, the plaintiff must give the defendant notice of such fact. No form of notice being prescribed by positive law, the form of notice is immaterial, but the fact is essential."

This finding was cited in L. R. A. 1918, 58n. The rule thus laid down has been followed consistently by the Massachusetts Courts.

*McFarland, et als* v. *Chase,* 7 Gray, 462.
*Mizner* v. *Munroe,* 10 Gray, 290.
*Pratt* v. *Farrar,* 10 Allen, 520.
*Decker* v. *McManus,* 101 Mass., 63.
*Lawton* v. *Savage,* 136 Mass., 111.
*Dixon* v. *Smith,* 181 Mass., 218, 63 N. E., 419.

In the latter case the Court quoted the language of Judge Shaw in *Furlong* v. *Leary,* supra.

In the case of *Sullivan, et ux.* v. *Carberry,* 67 Me., 531, 532, Chief Justice Appleton, in commenting upon the rights of the plaintiffs who maintained, as tenants at will, a building upon the land of another, said:

"Not knowing when their rights would terminate, they would have a reasonable time after such termination in which to remove any fixtures they might have erected upon the land."

The principle upon which the statement is founded is not directly in point with the issue that we have before us, but the principle would not be consistent with a rule that a tenant whose tenancy has been terminated without his knowledge will not be entitled to notice and reasonable time in which to vacate before being declared a disseizor.

The situation of the tenant is analagous to that of a bailee in possession of personal property. If goods have rightfully come into his possession neither replevin nor trover may be maintained against him without demand and refusal or some act upon his part antagonistic to the rights of the owner.

*Eveleth* v. *Blossom,* 54 Me., 447, 92 Am. Dec., 555; *Acceptance Corp.* v. *Littlefield, Crockett Co.,* 128 Me., 389, 147 A., 868; *Galvin* v. *Bacon,* 11 Me., 28, 25 Am. Dec., 258; *Dean* v. *Cushman,* 95 Me., 454, 50 A., 85, 55 L. R. A., 959, 85 Am. St. Rep., 425.

If the owner of goods delivers the same to a bailee for hire (rents them) and afterward gives a bill of sale to a third party, the grantee is subject to this rule. We know of no principle upon which it can be said that the bailee is entitled to more consideration than the tenant.

If the action can be maintained against the tenant without notice, he can be made to answer to a judgment carrying costs and execution running against the body. Sec. 45, Chap. 124, R. S., and this without opportunity of avoiding such liability. We do not think that such is the law.

The defendant was entitled to notice of the lease before action was brought.

It is not necessary to pass upon other questions raised in the bill of exceptions.

*Exceptions Sustained.*

### Dissenting Opinion

MURCHIE, J.   I am unable to concur. Practice which has the sanction of long use should rarely be cast aside, and never so, in my opinion, without a clear declaration of the procedure which should take its place.

The decision that forcible entry process is not available for an alienee of property, against the former tenant at will of his

alienor in possession, until after opportunity has been given the latter to vacate the premises without suit, is contrary to earlier decisions in this Court and to the trend of a considerable line thereof. The majority declares the procedure attempted to be used by the plaintiff in the instant case improper, but fails entirely to state how an alienee entitled to the possession of property should proceed to secure it.

In the majority opinion, hereinafter referred as the "Opinion," emphasis, laid by *italics*, on words quoted from *Howard* v. *Merriman*, 5 Cush., 563, implies that notice, entry and demand are all requisite, but there is suggestion that notice may be sufficient, if time is allowed for removal, and recital that the defendant in *Bennett et al.* v. *Casavant*, 129 Me., 123, 150 A., 319, had knowledge that an instrument of alienation had been executed by his former landlord, and delivered to the plaintiffs, indicates that notice in such circumstances is unnecessary, although it is difficult to understand how a time element could then be measured. The words controlling the decision, that "defendant was entitled to notice of the lease before action was brought," adjudicate that notice, or something equivalent thereto, and time, for which no equivalent is possible, are both essential. The time factor is not delimited.

Of eight exceptions presented, three have no merit. Neither the first nor the second alleges a specific error of law, and the eighth is untenable under the principle declared in *Bennett et al.* v. *Casavant*, supra, that fraud will not vitiate the power of a lease to determine a tenancy at will, and the right to occupy premises thereunder. The third, fourth and seventh relate to demand rather than notice, although the last alleges error in failure to distinguish between the two. Since demand is not mentioned in the Opinion, except by way of comment on *Karahalies* v. *Dukais*, 108 Me., 527, 81 A., 1011, and *Howard* v. *Merriam*, supra, and in quotations from cases, the decision must rest on the fifth and sixth exceptions which allege that "there could be no disseisin," respectively, until the parties

made it so by their acts, or without intent on the part of the defendant "to exclude the plaintiff from her rights."

Decision on either of these grounds, if time for removal is requisite, is directly opposed to *Rancourt* v. *Nichols*, 139 Me., 339, 31 A., (2d), 410, where lease, notice and process were executed, given and commenced on the same day, and, if the time element must be measured from notice, or knowledge that an alienee desires possession as distinguished from knowing that he has acquired the right thereto, it is incompatible with *Bennett et al.* v. *Casavant*, supra. Neither in that case nor in the language used in the Opinion to distinguish it from the present one is there implication that the defendant knew the plaintiffs sought possession previous to the service of process upon him. The opinion therein carries no intimation that the dates of lease, knowledge and process were alleged, proved or considered. That they were not deemed important is clearly implied in declaration that the lease "put an end to the right of the defendant to occupy the demanded premises." For this broad statement, rather than the more limited one that alienation determined the tenancy, the *Bennett* case cites *Seavey* v. *Cloudman*, 90 Me., 536, 38 A., 540, and dictum in *Karahalies* v. *Dukais*, supra. Neither goes quite so far, unless determination of tenancy ends the right of occupation, but both declare the process appropriate for use by an alienee, and neither alludes to necessity for either action on his part, or the lapse of time, before service of process on the former tenant of his alienor.

Unless the Opinion is intended to declare a time factor involving more than one day, the decision runs counter also to *Karahalies* v. *Dukais*, supra. There lawful entry, determination of tenancy, demand for possession and refusal to quit were all present, and the Court recognized that the plaintiff relied upon disseisin and might have prevailed on that ground, but recovery was denied because the declaration did not allege that the defendant was either a disseisor, or a tenant whose estate had been determined under the statute.

The above cases do not include all that are contravened by the present decision. In *John et al.* v. *Sabattis*, 69 Me., 473, and *Folsom* v. *Clark*, 72 Me., 44, possession was recovered against former tenants of deceased life tenants, as disseisors, without intimation of need for declaration, or proof, of notice, knowledge, demand for possession, or time for removal. Before either of these Chief Justice Whitman had stated, in *Wheeler* v. *Wood*, 25 Me., 287, that one in the situation of the present defendant was "a disseisor, or tenant at sufferance," indicating his view, and that of the Court for which he spoke, that there was no distinction between the two so far as right to possession was concerned. Reference in the Opinion to a notice "disregard of which" (by a tenant at sufferance) "will constitute him a disseisor" suggests that the process is not available against a tenant at sufferance, whose earlier tenancy at will had been determined by operation of law, until he asserts a possession which, if continued, would give him a possessory title.

The decision is grounded in construction of our statute, fortified by Massachusetts authority. The theme which underlies construction is that the process if of "a highly tortious character," for which no authority is cited, nor can any be found in either textbook or decided case, although 36 C. J. S., 1146, Par. 3, says that the action sounds "in tort," when it provides remedy "against forcible invasion." The same thought is expressed in the definition of the word "disseisin" in 18 C. J., 1284. Following the material quoted in the Opinion, the text continues:

"The term also has been judicially defined as an ouster; an actual ouster; a tortious ouster; . . . Disseisin occurs only when an entry is made . . . unlawfully . . . with the intent to hold . . . under claim adverse."

If the statute as amended in 1850, as hereafter noted, is to be construed in accordance with such a definition, then the enact-

ment of that year did not eliminate the requirement of force, but imposed the more restricted element of intent to exclude the party entitled and restricted rather than enlarged the field in which the process of forcible entry might be used. The cases of *Reed* v. *Elwell et al.*, 46 Me., 270, and *Dyer* v. *Chick*, 52 Me., 350, which are the only ones subsequent to 1850 cited as authority, relate to the rights of mortgagor and mortgagee and decisions in both Maine and Massachusetts have always held forcible entry process inappropriate against a mortgagor before foreclosure.

Prior to the separation of Maine from Massachusetts, the process was available only where actual force was involved. Our first Legislature extended it to reach tenants, after unlawful refusal to quit, Statutes of 1821, Chap. 79; *Wheeler* v. *Wood*, supra; but until 1849, one could proceed under this extension only against his own former tenant, *Wheeler* v. *Wood*, supra, and then only when the unlawful holding exceeded 30 days, *Clapp* v. *Paine*, 18 Me., 264; *Smith* v. *Rowe*, 31 Me., 212; *Dutton* v. *Colby*, 35 Me., 505. Until 1850 the process could not be used against anyone other than a former tenant of the plaintiff, except where the entry or detainer alleged was both "unlawful and forcible," R. S. (1840), Chap. 128, Sec. 2; *Wheeler* v. *Wood*, supra. The last is one of two leading cases heretofore decided under our statute and affirms the principles which in 1845, and at earlier times, controlled its application. It is neither cited nor mentioned in the Opinion, perhaps because of the comment heretofore quoted from it, and declarations that a tenant at sufferance has no estate in property, and may be turned out "without ceremony."

Inquiry as to legislative intention, underlying R. S. (1930), Chap. 108, Sec. 1, should be directed to the enactments of 1847, 1850 and 1853, to which its provisions trace back, but there may be helpful indication in an 1849 law, incorporated in 1857 in the following section. P. L. 1847, Chap. 4, is not pertinent to the present inquiry, although it extended the avail-

ability of the process in a minor degree. P. L. 1849, Chap. 98, opened it for use against an occupant of property who had never been a tenant of the plaintiff, and P. L. 1853, Chap. 39, eliminated the notice earlier required in tenancy cases after an estate had been determined. The major change during the years 1847 to 1853 inclusive, as during the whole life of the statutory process, was made by P. L. 1850, Chap. 160. There the requirement of force was eliminated, and the word "disseisor" first appeared in the statute, substituting whoever might be so described for one whose entry or detainer was both unlawful and forcible, and provision was included that the process would lie against either a former tenant or a disseisor without notice to quit. This notice to quit could not have been the statutory one for determining a tenancy, for concurrent proviso was that proceedings against a former tenant must be commenced within 7 days of the expiration or forfeiture of his term. It is palpable that legislative intention in 1850, as in 1847 and 1849, and later in 1853, was to extend the process and expedite recovery under it. It is probable that the word "disseisor" was used with intention and expectation, in the light of the court declaration made 5 years earlier in *Wheeler* v. *Wood,* supra, that it would be interpreted to include tenants at sufferance. Many years later *Hathorn* v. *Robinson et al.,* 98 Me., 334, 56 A., 1057, carried comment that the framers of a statute might use a particular word in expectation that its interpretation would follow that declared in decided cases.

The phraseology of P. L. 1850, Chap. 160, was changed in our statutory revision of 1857 so that the authorization for process without notice may be read as applicable only to former tenants, and at the same time P. L. 1849, Chap. 98, was placed in a section which deals exclusively with tenancies at will, but in seeking to ascertain legislative intent from the use of words, the context in which they were originally placed should be given consideration, rather than an adaptation arranged in the work of statutory revision.

The original sources of our present statute are not mentioned in the Opinion which bases construction on the single word "disseisor" and fortifies the result by reference to an opinion which does not use the word in rendering decision under a statute in which it did not appear, *Furlong* v. *Leary*, 8 Cush. (Mass.), 409. Reference to the case shows a proceeding instituted under the Massachusetts statute, which appears as Chapter 104 of the Massachusetts Statutes in the revision of 1836. This relates back to a law enacted in 1825 (Chapter 89). *Hildreth* v. *Conant*, 10 Met., 298, decided in 1845, quotes section 1 of the 1825 law in words very different from those appearing in the revision. The original enactment provided, as the case states, that:

> " 'where the tenant or occupant of any house or tenement shall hold such house or tenement without right, *and after notice in writing to quit the same*, whoever has the right of possession thereof may summon such tenant or occupant' etc."

The phrase relative to notice is *emphasized* for the dual purpose of (1) noting that its quotation, 9 years after the revision, demonstrates that the court referred back to first sources in construing a statute as currently phrased, and (2) calling attention to the fact that no language of like import has ever appeared in our own statute.

The Opinion refers to a review of earlier decisions in *Howard* v. *Merriam*, supra, but fails to note that the case carries also a review of legislation which seems to forecast the decision in *Furlong* v. *Leary*, supra, in declaration that the process did not reach "every wrongdoer, or person holding possession . . . without right." These words clearly imply, contrary to the Opinion, that one who occupies without right is a wrongdoer, for a tenant at sufferance has no estate in, or right to occupy, premises, *Wheeler* v. *Wood*, supra. The Opinion does not cite the second of our own leading cases, *Dunning* v. *Finson*, 46 Me.,

546, where it is disclosed that the review of legislation in *Howard* v. *Merriam,* supra, had been read and appreciated. That case carries one statement of especial force in view of the emphasis laid on Massachusetts decisions in the Opinion. After earlier declaration that the language of the Massachusetts statute was more restricted than our own, it is expressly stated that:

> "cases in Massachusetts cannot control the plain language of our statute on this subject."

The *Dunning* case is cited in Lawrence's Maine Digest as declaring forcible entry process maintainable against a tenant at sufferance without notice. It may be doubted that the decision represents square authority on the point, although the court, in stating that the statute does not include a tenant at sufferance "in terms," seems plainly to imply that it is applicable to such a tenant, and if so applicable, it can be so only on the theory that his rights are similar to and no greater than those of such a tenant. In *Gower* v. *Watters,* 125 Me., 223, 132 A., 550, 45 A. L. R. 309, declaration in the *Dunning* case, that the holding of a tenant at sufferance is without right of any kind, was reaffirmed.

There can be no doubt that one who continues in possession of property after the expiration or forfeiture of his own leasehold estate, or that of another under whom he holds, becomes a tenant at sufferance, and this whether the forfeiture results from his own act or that of his landlord, if he be a sub-tenant. It is equally clear that he has no right to continue in possession, to notice, or to time for removal, for such is the express mandate of our law making authority, declared in the very statute construed by the Opinion. There is no statute authority for dividing tenants at sufferance into classes and vesting rights in those who become such by the determination of estates at will through operation of law greater than are held by others who acquire the status in different manner. It is the law, notwith-

standing the statement of the Opinion contra, that one who entered property lawfully as a tenant, if his estate had been determined by forfeiture resulting from his own act or that of another, may, without notice (or time for removal), be "made to answer to a judgment carrying costs and execution running against the body" *sans* opportunity to avoid liability, unless our courts, following decisions like those rendered in Mississsippi, New York and Oklahoma, in *Rabe* v. *Fyler,* 18 Miss., 440, 38 A.D., 763; *Mandel* v. *Fertig,* 65 Misc., 310, 121 N.Y.S., 669; and *Obert* v. *Zahn,* 45 Okla., 219, 145 P., 403, determine that judgment will not be entered (for costs) in forcible entry cases when a defendant vacates before return day. The statutes under which these cases were decided may be very different from our own, but the pleading suggested for defendant's protection in the Oklahoma case has heretofore been used effectively in this jurisdiction. In *Hilliker* v. *Simpson,* 92 Me., 590, 43 A., 495, plaintiff sought recovery by writ of entry of both real estate and rents and profits, but after a plea *puis darrien continuance,* asserting a title acquired subsequent to the commencement of the process, the plaintiff's claim for rents and profits was declared "a mere incident to the right to the land itself." The issue in forcible entry process is the right to possession alone, and if a defendant eliminates necessity for adjudication thereon by yielding possession before return day, refusal to award costs against him might well be based on determination that they were purely incidental to that recovery of possession which the statute authorizes.

Costs in the Municipal Court in the instant case, when decision was first rendered that fraud did not vitiate plaintiff's lease, would have covered little more, if any, than the price of writ, service and entry. They would now include accruals thereto, resulting from appeal to the Superior Court and the prosecution of exceptions against the decision therein. It may fairly be said that, except for a negligible amount, the costs which judgment against the defendant would impose presently

have accrued principally by his insistence upon an untenable principle of law. He asserts no claim here, nor did he in either of the courts below, that it is unjust to require him to pay costs because he had no opportunity to avoid liability by vacating the premises before suit was brought. Such is the unsolicited relief which the majority of the Court is conferring upon him. His assertion in the Municipal Court, in the Superior Court, and on his exceptions was, and is, that the plaintiff has no right to possession because he claims under a lease which is tainted with fraud. Decision on that major issue is against him, and it seems to me the mandate should be

*Exceptions overruled.*