**In the Matter of CAMDEN SHIPBUILD-ING CO., Debtor.**

**No. BK-63-415-K.**

United States District Court
D. Maine, S. D.
March 10, 1964.

Jon R. Doyle, Asst. Atty. Gen., Augusta, Me., for petitioner.

Benjamin Thompson, Portland, Me., Lewellyn R. Michaud, Orono, Me., for debtor in possession.

GIGNOUX, District Judge.

The State Tax Assessor of the State of Maine has petitioned for review of that part of the order of the referee in bankruptcy entered on January 3, 1964 which disallowed the state's claim, in the sum of $1,935.88, for sales taxes assessed on sales of materials incorporated by the debtor in possession in various yachts

being built by it under contracts with nonresidents of the State of Maine. The sole issue presented is the correctness of the referee's determination that these sales were exempt from taxation by virtue of Me.Rev.Stat. ch. 17 § 10, XXI (Supp.1963), which provides:

"Sec. 10. Exemptions.—No tax on sales, storage or use shall be collected upon or in connection with:

\* \* \* \* \* \*

"XXI. Boats sold to nonresidents. Sales to nonresidents of yachts and other pleasure boats and commercial vessels and boats either delivered outside the state or actually registered for numbering, enrolled or documented under federal or foreign law in the appropriate customhouses or registry offices for location thereof or home ports therefor outside the state and delivered in the state to be sailed or transported outside the state immediately upon delivery by the seller."

The relevant facts, which are not in dispute, may be briefly stated: For many years Camden Shipbuilding Co., the debtor in possession, has engaged at Camden, Maine in the business of building and selling boats, primarily pleasure craft. During the years 1961–63 it entered into the contracts here involved for the construction of yachts for nonresidents of the State of Maine. Insofar as material to this proceeding, these contracts contained essentially similar provisions. In each contract Camden undertook to "provide all the material" and to "perform all the work" for the construction of a yacht in accordance with the contract plans and specifications; the buyer undertook to pay a stipulated contract price by means of periodic payments as the work progressed; and the parties agreed that title in the vessel was to vest in the buyer upon the laying of the keel. After auditing Camden's records, the State Tax Assessor determined that sales taxes were due on the sales by Camden of the materials incorporated in the yachts pursuant to these contracts and assessed deficiencies accordingly.

The debtor in possession contested these assessments, and the referee sustained its position. The basis of the referee's disallowance of the state's claim was his construction of subsection XXI as being sufficiently broad to exempt from taxation not only sales to nonresidents of completed yachts or other vessels but also sales to nonresidents of materials incorporated by builders in such vessels.

Established principles, accepted long ago by the Supreme Judicial Court of Maine, must guide this Court in its interpretation of this Maine statute. The primary duty of the Court is, of course, to give effect to the intent of the Legislature as evidenced by the language used in the statute, and "[i]f the meaning of the language is plain the Court will look no further; it is interpreted to mean exactly what it says." Sweeney v. Dahl, 140 Me. 133, 140, 34 A.2d 673, 676, 151 A.L.R. 356 (1943); Crawford, Statutory Construction § 164 (1940). Unless inconsistent with the plain meaning of the act, statutory words and phrases "shall be construed according to the common meaning of the language." Me.Rev. Stat. ch. 10 § 22, subd. I (1954); Camp Walden v. Johnson, 156 Me. 160, 165, 163 A.2d 356 (1960); Crawford, op. cit. supra § 186. A statute granting exemption from taxation is to be strictly construed, and "all doubt and uncertainty as to the meaning of a statute is to be weighed against exemption; \* \* \*." Inhabitants of Mechanic Falls v. Millett, 121 Me. 329, 331–332, 117 A. 93, 94, (1922); Inhabitants of the Town of Holden v. James, 136 Me. 115, 116–117, 3 A.2d 431 (1939); Crawford, op. cit. supra § 258 (1940); cf. Bouchard v. Johnson, 157 Me. 41, 45–46, 170 A.2d 372 (1961).

In the light of these principles, this Court cannot accept the referee's construction of subsection XXI. The exemption applies in terms only to sales to nonresidents of "yachts and other pleasure boats and commercial vessels and boats \* \* \*." Certainly, the words "yachts", "boats" and "vessels" had a common and accepted meaning among the

people of the State of Maine, including the members of the Maine Legislature, at the time of the enactment of the statute. Compare Camp Walden v. Johnson, supra, 156 Me. 165, 163 A.2d 356. The statute contains no indication that these words were intended to include, in addition to completed vessels, materials sold by the builder during their construction. The language of the statute is plain and unambiguous. It should be given its normal meaning, which is that it exempts from taxation only sales to nonresidents of completed vessels.

■■ In construing subsection XXI to include sales to nonresidents of materials for the construction of yachts and other vessels, the referee relied primarily upon the evident intent of the Legislature to assist the boatbuilding industry in the State of Maine as expressed in the emergency preamble to the enacting legislation, P.L. of Me. 1957 ch. 199. That reliance was misplaced. First, where, as here, the language of a statute is plain and unambiguous, courts may not properly resort to the preamble of the act as an aid in its construction. Milk Control Bd. v. Gosselin's Diary, Inc., 301 Mass. 174, 179–180, 16 N.E.2d 641 (1938); Thompson v. Wallin, 276 App.Div. 463, 95 N.Y.S.2d 784, 789 (1950); Yazoo & Mississippi Valley R. Co. v. Thomas, 132 U.S. 174, 188, 10 S.Ct. 68, 33 L.Ed. 302 (1889); Crawford, op. cit. supra § 205.

Maine may even have a more strict rule. Harlow v. Young, 37 Me. 88, 91 (1854). Second, the preamble indicates no more than the desire of the Legislature to improve the competitive position of the Maine shipbuilding industry by exempting from the sales tax sales of "boats" to nonresidents.[1] The word "boats" in the preamble is essentially neutral and throws no light upon the meaning of the words "yachts", "boats" and "vessels" in the body of the statute. Admittedly, the construction which the referee adopted would extend the scope of the statutory exemption, and to that extent further effectuate the purpose of the Legislature to improve the competitive position of the Maine shipbuilding industry. However, if the Legislature had intended to exempt from taxation sales of materials incorporated in yachts and other vessels for nonresidents, it could easily have said so. The Legislature not having done so, no recognized principle of statutory construction supports the strained construction adopted by the referee.

The debtor in possession suggests as an alternative basis for sustaining the referee's order that the transactions here involved were sales of completed yachts rather than sales of materials for their construction, and that they were therefore within the express language of subsection XXI. The contracts in question, however, are essentially indistinguish-

---

1. The title and emergency preamble to P.L. of Me.1957 ch. 199 read as follows:

"AN ACT Relating to Sales and Use Tax on Certain Boats Sold to Nonresidents.

"Emergency preamble. Whereas, the continued operation of the boatbuilding industry in the coastal counties of this State is vital to the economy of those counties and to the welfare of the residents thereof; and

"Whereas, the boats built in this State are sold almost exclusively to nonresidents in a strongly competitive market; and

"Whereas, the imposition of the Maine sales tax upon sales by Maine boatbuilders of boats to nonresidents is resulting in substantial loss of sales to Maine boatbuilders and will, by reason of the publicity being given to such tax by nonresident boatbuilders, result in substantial additional loss of such sales; and

"Whereas, the boatbuilding industry in Maine is thereby affected to the extent that the continued operation of the Maine boatbuilding establishments during the spring and summer of the current year and thereafter is endangered; and

"Whereas, the closing of such boatbuilding establishments would result in the loss of employment by a great number of people in said counties and the loss of substantial amounts of business by business concerns in Maine which furnish materials and supplies to such boatbuilding establishments; and

"Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now therefore,"

754

able from the contract recently construed by the Supreme Judicial Court of Maine in Hinckley v. Johnson, 153 Me. 517, 138 A.2d 463 (1958). Here, as in Hinckley, the contracts provided that title to the vessel was to remain in the buyer at all times. "In other words, title to the materials by the clear intendment of the contract(s) passed to the buyer as they were appropriated to the job." Id. 153 Me. at 520, 138 A.2d 465. In the Hinckley case the Maine court expressly rejected the contention that the contract was for the sale of a completed yacht. The court there said:

"One has only to read the agreement to discover that here was no contract for the sale of a completed yacht. There was a sale, to be sure, but it was the sale of materials supplied under a contract for construction. * * *" Ibid.

This Court cannot agree with the referee's conclusion that "the crux of the Hinckley decision is that as between identical parties there is but one sale of the vessel; * * *" The holding of the Hinckley case, as this Court interprets it, is that there was but one sale—that of materials for a yacht; there was no sale of a completed yacht. Under the authority of Hinckley, the debtor's contention that the transactions here in issue were within the express language of the subsection XXI exemption because they were sales of yachts to nonresidents is without merit.

There remains for consideration only the debtor's argument that the transactions here involved were exempt from taxation because the statutory exemption provides that "no tax * * * shall be collected upon or *in connection with* * * *" the sale of a vessel to a nonresident. (Emphasis supplied.) The short answer to this contention is that before there can be an exemption from a tax "in connection with" the sale of a vessel to a nonresident, there first must be such a sale. Here there was not.

The order of the referee is vacated, and the matter is recommitted to him for further proceedings consistent herewith.