**George REGGEP, Employee**

v.

**LUNDER SHOE PRODUCTS COMPANY,**
Employer and Utica Mutual Insurance
Company, Insurance Carrier.

Supreme Judicial Court of Maine.

May 14, 1968.

Robert M. York, Old Orchard Beach, for appellant.

Clement F. Richardson, and Edward T. Richardson, Jr., Portland, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal from a Pro Forma Decree of the Superior Court.

For several years prior to 1965 our statutes providing Workmen's Compensation for personal injuries computed compensation for all total incapacities on the basis of ⅔ of the employee's average weekly wages. 39 M.R.S.A. § 54. This included the so-called *permanent* total incapacities resulting from the most devastating injuries for which weekly compensation could be paid for as long as 500 weeks and the so-called *presumed* total incapacities resulting from less serious injuries where the law arbitrarily limited compensation to certain presumed periods (for example, in the case of the loss of an index finger incapacity was presumed to continue 32 weeks and compensation was limited to that period). 39 M.R.S.A. § 56.

In 1965 the Legislature enacted Chap. 408, § 5 of the Public Laws which repealed § 54, and substituted in its place:

"While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation *equal to ⅔ his average weekly wages*, earnings or salary, but not more than ⅔ of the average weekly wage in the State of Maine as computed by the Employment Security Commission. In the following cases it shall, for the purposes of this Act, be conclusively presumed that the injury resulted in permanent total incapacity; the total and irrevocable loss of sight of both eyes, the loss of both hands at or above the wrist, the loss of both feet at or above the ankle, the loss of one hand and one foot, an injury to the spine resulting in permanent and complete paralysis of the arms and legs and an injury to the skull resulting in incurable imbecility or insanity. * * *" (Emphasis added.)

Section 5 of the same chapter repealed the first paragraph of 39 M.R.S.A. § 56 and reads:

"In addition to the benefits provided for in sections 54 and 55, when an employee sustains an injury which is included in the following schedule, the incapacity in each case shall be deemed to be total for the period specified and the injured employee shall receive a lump sum payment for said injury which shall be determined by multiplying the *average weekly wage,* as determined by section 2, subsection 2, by the period of presumed total incapacity hereinafter set forth. The specific periods of presumed total incapacity because of injuries hereinafter specified shall be as follows: * * *. For the loss of the first finger, commonly called the index finger, 32 weeks. * * *" (Emphasis added.)

The language of these amendments would appear to require that compensation for a presumed total incapacity, such as the loss of an index finger, would be a lump sum equal to the employees *weekly wage* multiplied by an arbitrary figure while that for permanent total incapacity would still be a weekly compensation amounting to *⅔ of his weekly wage* and still extending for an indefinite period of time.

These amendments went into effect on November 30, 1965. On January 20, 1966, the petitioner, an employee of defendant Lunder Shoe Products Company, whose insurance carrier was the other defendant, received a personal injury in his employment which resulted in an amputation of part of his index finger, amounting at law to the loss of the whole finger. After hearing, the Industrial Accident Commission found that the petitioner's average weekly wage was $109.75 and that petitioner was entitled to receive from defendants a lump sum payment amounting to $109.75 multiplied by 32 or $3,512.00, with credit for voluntary payments by defendants of $1,948.96. On defendants' appeal the Commissioner's order was embodied in a pro forma decree of a Justice of the Superior Court from which this appeal was taken.

When petitioner's injury occurred, the same Legislature which had last amended the reference statutes was in special session. Among other matters considered, it

enacted as emergency legislation several changes in the Workmen's Compensation Act. The emergency preamble recited that "certain provisions of the Workmen's Compensation Act are subject to varying interpretations" and that the proposed amendments were "vitally necessary to prevent confusion and hardship on both employers and employees." These changes included further amendments of Sections 54 and 56 the effect of which was that compensation for permanent total disability and for presumed total disability shall both be computed on the basis of ⅔ of the employee's average weekly wage. The amendments became effective February 1, 1966.

█ It is not disputed that petitioner's right to compensation as a result of his injury became vested on January 20, 1966, the date of his injury, and cannot be reduced or enlarged by legislation enacted subsequent to that date. Gauthier's Case, 120 Me. 73, 113 A. 28 (1921). The sole issue for our determination is the interpretation of the relevant statute in effect January 20, 1966, particularly 39 M.R.S.A. § 56 as amended by Chapter 408, § 5 of the Public Laws of 1965.

That section states clearly that an injured employee in petitioner's situation "shall receive a lump sum payment for said injury which shall be determined by multiplying the *average weekly wage* * * * by the period of presumed total incapacity herein set forth." (Emphasis added.) The defendants concede that the language standing alone is plain and unambiguous. Defendants contend, however, that when the act is read in its entirety and especially when Section 5 is read in relation to the other amendments above discussed, it becomes evident that the Legislature did not intend compensation for a presumed total incapacity to be computed on a basis of *total* average weekly earnings.

Particularly, defendants contend that it is inconsistent for the Legislature, in its 1965 amendments, to have made total average weekly wages the basis for computing presumed total incapacity while still computing the more serious permanent total incapacity on the basis of only ⅔ of the average weekly wage and that the Legislature could not have intended such a result. Defendants also point out that steps to change the 1965 amendments in question were taken by the Legislature before they had been in effect two months and they argue that the circumstances of this change indicate that the language of Section 5 was inadvertent. These conclusions do not necessarily follow. While it does seem unusual that compensation for a presumed total incapacity such as loss of a finger is computed on a basis of an average wage while that of permanent total incapacity is computed on a basis of only ⅔ of the average weekly wage, we notice that this formula was chosen for the purposes of arriving at a lump sum based on a comparatively brief period of presumed incapacity while compensation for permanent total incapacity consists of weekly payments which may continue for as long as 500 weeks and be accompanied by other payments for rehabilitation, sustenance and travel. The Legislature may, have recognized and corrected an earlier error, as defendants contend, or it may only have had second thoughts as to the fairness or utility of this formula for computation.

█ Our judgment as to the outcome of this case is based upon consideration of principles of construction of statutes. We recognize that the fundamental rule of construction is to give effect to the intention of the Legislature. Cushing v. Inhabitants of Town of Blue Hill, 148 Me. 243, 92 A.2d 330 (1952). The legislative intent must be sought first from the language used by the Legislature. Farris ex rel. Dorsky v. Goss, 143 Me. 227, 60 A.2d 908 (1948); Sweeney v. Dahl, 140 Me. 133, 34 A.2d 673, 151 A.L.R. 356 (1943). If that language is ambiguous, the Court may look beyond it to the purposes of the legislation, the circumstances surrounding its enactment and the results to be expected from

the suggested constructions. Coffin v. Rich, 45 Me. 507 (1858). To ascertain the intent of the Legislature, all parts of the statute in question must be taken into consideration. Cloutier v. Anctil, 155 Me. 300, 154 A.2d 175 (1959). It has also been said that the Court should not adopt a construction which would have an absurd result or one clearly not within the contemplation of the Legislature even though the Court might have to disregard the strict letter of the law. Inhabitants of Town of Ashland v. Wright, 139 Me. 283, 29 A.2d 747 (1943).

■ Here, language of Section 56, standing alone, is clear and unambiguous. Viewing it in connection with the remainder of the statute we cannot say that a strict construction would lead either to ambiguity or to absurd results. Our examination of its legislative history does no more than suggest that there may have been inadvertence. We cannot say that consideration of the legislative purpose makes unreasonable a literal acceptance of the clear language of the statute.

"* * * [T]he principle is thoroughly established that statutory language which is clear and unambiguous must be held to mean what it declares plainly." State v. White, 145 Me. 381, 382, 71 A.2d 271, 272 (1950).

"A statute which within itself is clear should be construed as it reads. Resort may be and should be had to the genesis and evolution of statutes to explain, but not to discover ambiguities." Burrill National Bank v. Edminister, 119 Me. 367, 370, 111 A. 423, 425 (1920).

"It is only when the words of a statute are obscure, or doubtful, that we have any discretionary power in giving them a construction, or can take into consideration the consequences of any particular interpretation." Coffin v. Rich, 45 Me. 507, 511 (1858).

"Justice Holmes, before he became a member of the Supreme Court, made a statement which is peculiarly applicable here: 'We do not inquire what the legislature meant, we ask only what the statute means.' This court is not concerned with the consequences of statutory or constitutional provisions. Our duty is to interpret, not to make the law." Farris ex rel. Dorsky v. Goss, supra, 143 Me. at page 230, 60 A.2d at page 910.

Section 5 of Chapter 408 of the Public Laws of 1965 clearly provided that the factor in issue to be used in computing a presumed total incapacity, such as plaintiff's, was the average weekly wage.

The entry is:

Appeal denied.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel be paid by the employer to the employee.

DUFRESNE, J., did not sit.