STATE OF MAINE

YORK, ss.

STATE OF MAINE
COUNTY OF YORK
CLERK'S OFFICE
RECEIVED

2000 DEC -5 P 4: 15

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-046
GAB -YOR-12/5/2000

STATE OF MAINE,

Plaintiff/Appellee

v.

ORDER

DAVID B. CHITTIM,

Defendant/Appellant

DONALD L. GARBRECHT
LAW LIBRARY

DEC 7 2000

This is an appeal from a District Court adjudication that Mr. Chittim committed a traffic infraction. For reasons stated below, the appeal is Denied.

## FACTUAL BACKGROUND

On December 26, 1999, David Chittim's son was stopped for speeding while operating a vehicle registered to Chittim's wife. Chittim was a passenger in the car. The police officer observed that a self-adhesive sticker with the message "Taxationland" was placed upon rear license plate. The police officer then inspected the front license plate and discovered a similar sticker that read, "The Crawdad State." Chittim admitted to affixing both these stickers and was cited for violating 29-A M.R.S.A. § 2104(4).

A hearing was held before Judge Janelle on March 1, 2000 and a written decision was issued on March 8th, finding that Chittim had violated § 2104(4). A sentencing hearing was subsequently scheduled for April 10th. Chittim's Notice of Appeal was filed on April 7th. Chittim also filed a "Motion for Stay of Execution." At the sentencing hearing on April 10th, neither Chittim nor his counsel appeared

before the court. The Motion was denied and a fine of $20 was imposed.[1] Chittim paid the fine in full on May 8th.

## DISCUSSION

### (1) By paying the fine after the decision was rendered, did Chittim terminate his right to appeal?

The State argues that by paying the fine after the decision was rendered, Chittim effectively terminated the action. Three of the cases cited by the state to support this proposition involve payments of fines subsequent to a criminal conviction. State v. Haskell, 492 A.2d 1265 (Me. 1985); State v. Lewis, 406 A.2d 886 (Me. 1979); State v. Madden, 357 A.2d 516 (Me. 1976). In Haskell, Lewis, and Madden, the discussion largely revolved around M.R. Crim. P. 38 and whether the payment made was a deposit of the fine pending appeal, or a payment of the fine. The State also cites State v. Osborne, 143 Me 10, 54 A.2d 526 (1947). However, in Osborne, which is also a criminal case, the Court held that the defendant could not plead guilty, pay his fine, and subsequently file a motion to withdraw his guilty plea.

Chittim argues that he was merely complying with the guidance provided by the Maine Judicial Branch Violations Bureau.[2] Paragraph four states:

> 4. Fine Deposit. You must also submit a check or money order for the amount of the fine that was assessed against you, including any surcharge that has been imposed. This check or money order must also be payable to the Violations Bureau. If you win your appeal, you will get this money back. If you lose your appeal, this sum will pay your fine.

---

[1] 29-A M.R.S.A. § 103 states that the exclusive penalty for a traffic infraction is a fine of not less than $25 nor more than $500, unless specifically authorized.

[2] See attachment to Appellant's Reply and Opposition to State's Motion to Dismiss Appeal.

Chittim correctly notes that the above rule makes the payment of his fine pending appeal mandatory. M. R. Crim. P. 38 is inapplicable and cannot be analogized to the present case. A traffic infraction is not a crime. 29-A M.R.S.A. § 103. M. R. Civ. P. 80F(j), governing the appeal of traffic infractions states that "a party entitled to appeal may do so as in other civil actions." M.R. Civ. P. 62(e) states "the taking of an appeal from a judgment shall operate as a stay of execution upon the judgment during the pendency of the appeal, and no supersedeas bond or other security shall be required as a condition of such stay." M.R.Crim.P. 38, in contrast, requires that the portion of a sentence involving money "shall be stayed by the court upon request of the defendant if an appeal is taken" and, according to the cases cited by the State, the fine must be designated as payment of the fine, or a deposit of the fine pending appeal.

(2) Because the stickers were attached to the license plate prior to the enactment of 29-A M.R.S.A. § 2104(4), do Chittim's actions constitute a traffic infraction?

Chittim next argues that because he "added or attached" the stickers prior to the enactment of 29-A M.R.S.A. § 2104(4), his actions could not constitute a traffic infraction. 29-A M.R.S.A. § 2104(4), which became effective July 1, 1996, states:

> **Alterations to registration plates.** Except when a greater penalty is applicable, a person commits a traffic infraction if that person adds or attaches to a registration plate a decal, symbol, slogan, mark, letter or number not authorized by law or by the Secretary of State.

Chittim quotes various cases for the proposition that statutes are considered to have prospective operation only, unless legislative intent to the contrary is clearly expressed or necessarily implied. Coates v. Maine Employment Security Comm'n,

3

406 A.2d 94 (Me. 1979); Reggep v. Lunder Shoe Products Co., 241 A.2d 802 (Me. 1968); Sabasteanski v. Pagurko, 232 A.2d 524 (Me. 1967); Miller v. Fallon, 134 Me 145, 183 A. 416 (1936).

However, the statute in question is not being applied retroactively. By placing the stickers on the plates and by keeping these stickers on the plates after the statute was enacted, Chittim violated the statute. For the same reason, the State's action is not time-barred by the six-year statute of limitations. 14 M.R.S.A. § 752.[3]

3. Can a passenger of a vehicle be cited for violating 29-A M.R.S.A. § 2104(4) when the vehicle is not registered to the passenger?

It is not disputed that Chittim was the passenger of the vehicle in question and that the vehicle is registered to his wife. It is also not disputed that Chittim himself attached the stickers to the plate.[4] The wording of the statute clearly provides that *the person adding or attaching* details to a registration plate commits a traffic infraction. The person who altered the plate, by the plain terms of the statute, need not be the driver or the registered owner.

4. Is requiring the message "Vacationland" or the red lobster precluded by Wooley v. Maynard?

In Wooley v. Maynard, 430 U.S. 705 (1977), George and Maxine Maynard, followers of the Jehovah's Witnesses faith, were charged for covering up the "Live

---

[3] 14 M.R.S.A. § 752 states: "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards. . ."

[4] Chittim apparently affixed the stickers when the plates were assigned to a different vehicle. The plates in question were then subsequently attached to the vehicle stopped.

4

Free or Die" motto on New Hampshire's license plates. Mr. Maynard testified that he found the slogan "morally, ethically, religiously and politically abhorrent." Id. at 712. [5] The Court stated that the freedom of thought protected by the First Amendment includes both the right to speak and the right to refrain from speaking at all. Id. (citing Board of Education v. Barnette, 319 U.S. 624 (1943)). "A system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster such concepts." Id. at 714. The Court concluded that New Hampshire's statute required that the Maynards use their private property as a "mobile billboard" for the State's ideological message and therefore implicated the protection of the First Amendment protection. The Court then continued their analysis to determine whether the State's countervailing interest was sufficiently compelling to justify requiring the Maynards to display the state motto on their license plate. Id. at 715-16. The State offered two interests advanced by the display of the motto: (1) facilitating the identification of passenger vehicles and; (2) promoting appreciation of history, individualism, and state pride. The Court found that the specific configuration of the letters and numbers already distinguished passenger vehicles from other types of plates. The State's second claimed interest, the Court found, was not ideologically neutral: "[t]he State is seeking to communicate to others an official view as to proper 'appreciation of history, state pride, [and] individualism. . . . [W]here the State's interest is to

---

[5] Mr. Maynard explained that "[b]y religious training and belief, I believe my 'government' - Jehovah's Kingdom - offers everlasting life. It would be contrary to that belief to give up my life for the state, even if it meant living in bondage. . . . I also disagree with the motto on political grounds. I believe that life is more precious than freedom." Wooley v. Maynard, 430 U.S. at 708 & n. 2.

disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message." Id. at 717.

In the present case, the following exchanges illustrate the reason Chittim placed stickers over the Vacationland motto:

Q: Okay. How do you feel about the state's motto on license plates?

A: I'm concerned about it. I think that . . . "Vacationland" promotes people coming into what I perceive to be my state. I don't really want to share it."

Q: And so how do you feel about its being on your license plate?

A: I don't like it.

Q: Okay. So, why a "Taxationland" sticker?

A: Because I feel that I pay a proportionately large share of taxes, given people in the other parts of the country, in income tax, sales tax, personal property tax. I'm fairly highly taxed. I think we all are.

. . . .

Q: Why the "Crawdad State?"

A: Basically, the "Taxationland" was unavailable, and as clever as I think the idea is now, it didn't occur to me - - "Crawdad State" was available.

. . . .

Q: And was the taxation sticker and the "Crawdad State" sticker a violation of your religious right, in your opinion?

6

A: I'm not particularly religious. So, I couldn't answer that truthfully.

Transcript pp. 18, 19, & 23.

Chittim, is his brief and Opposition to State's Motion, argues that "Vacationland" or the red lobster are sufficiently ideological that the State's requiring their display is precluded by Maynard. Chittim argues that "Vacationland" is ideological - the idea is to promote Maine's tourist industry, just as the lobster image is advertising for both Maine's fishing industry and for Maine's seafood restaurants. In addition, Chittim argues that the State has no compelling interest in forcing vehicle owners to pass on it's message that tourism should be encouraged and lobsters should be eaten.

The State counters that 29-A M.R.S.A. § 2104(4) does not in any way require the owner or operator to disseminate the "Vacationland" message. The State argues that Chittim, pursuant to 29-A M.R.S.A. § 2104(2), can obscure anything on the license plate except the identification numbers and letters, the state name, validation stickers, and the type of plate. Therefore, the State argues, Chittim can completely obliterate "Vacationland" if they want to do so, but, by virtue of § 2104(4), cannot add to the license plate - they cannot add letters or numbers, or philosophical, political, profound or humorous signs or slogans.

Presuming, without deciding, that Chittim's First Amendment rights are implicated in requiring the display of "Vacationland" on his license plates (although this is doubtful), the fact that Chittim is permitted to obscure "Vacationland" distinguishes this case from Maynard. 29-A M.R.S.A. § 2104(4) prohibits only adding

7

or attaching a decal, symbol, slogan, mark, letter or number.[6]   29-A M.R.S.A. § 2104(2), as noted above, prohibits someone from obscuring identification numbers, identification letters, the state name, validation sticker or mark distinguishing the type of plate attached to a vehicle.  By omission, § 2104(2) permits "Vacationland" to be obscured[7].  Chittim therefore is not required to display a message he finds offensive, but he cannot replace the message with his own.  The State has a substantial interest in enabling law enforcement officers to identify plates quickly and easily, and the restrictions imposed by 29-A M.R.S.A. § 2104(4) substantially furthers this interest.

The clerk may incorporate this decision in the docket by reference.

Dated:        December 5 , 2000

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
MICHAEL CANTARA DA
PO BOX 399
ALFRED ME   04002

JOSEPH A WANNEMACHER AAG
6 STATE HOUSE STATION
AUGUSTA ME   04333-0006

DEFENDANT:
KEVIN T COLE ESQ
33 FESSENDEN ST, PORTLAND, ME.   04103

[6] Note, there is no legislative history for § 2104(4).

[7] Note, 29-A M.R.S.A. § 452 requires that "the plates, including the numbers, letters and words, must always be plainly visible and legible." "Words," read together with 29-A M.R.S.A § 2104(2) must not include "Vacationland."