Edwin M. CHURCH

v.

Arthur C. McKEE, Sr. and/or United States Fidelity & Guaranty Company.

Supreme Judicial Court of Maine.

June 23, 1978.

Wathen & Wathen by Warren E. Winslow, Jr. (orally), Augusta, for plaintiff.

Clyde L. Wheeler, (orally), Waterville, Leon V. Walker, Jr. (orally), Asst. Atty. Gen., Augusta, for defendant. ·

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

The employer and his insurance carrier appeal from a decree of the Industrial Accident Commission denying their request that a portion of the employee's disability payments be made from the Second Injury Fund established under 39 M.R.S.A. § 57. The parties agree that the employee Edwin M. Church is entitled to compensation for total permanent incapacity. The appeal involves a dispute about the source of the compensation payments.

Nearly fifty years ago, as a result of a childhood injury, employee Edwin Church suffered 75 per cent impairment of his right hand. On April 13, 1973, as the result of a work-related injury he suffered 75 per cent impairment of his left hand. The result of those injuries was total permanent incapacity. The absence of either impairment would have left the employee with some work capacity. On the basis of those facts, the employer requested that the Commission assess a portion of the employee's disability payments to the Second Injury Fund because the incapacity arose in part from a pre-existing permanent impairment. The employer's request was denied and this appeal was taken.

This appeal raises the question whether the Second Injury Fund is liable for disability payments arising from incapacity that results from the combination of a work-related impairment and a pre-existing non-work-related impairment. The Maine Workmen's Compensation Act has contained for many years a provision known as the Second Injury Fund, 39 M.R.S.A. § 57. Although the statute has been amended many times, it has always provided a funding mechanism and authorization for the Commission to assess part of an employee's compensation payments to the fund when a qualifying second injury is sustained. This court has recognized that the underlying purpose of the Second Injury Fund is to create an inducement to employers not to deny employment to handicapped persons:

"The purpose of such statutes is, not only to relieve the employer from liability for incapacity occasioned by the first injury or diseased condition as the case may be, but to minimize the chance that wage earners may be denied employment because of a physical handicap." *Gagnon's Case*, 144 Me. 131, 134, 65 A.2d 6, 8 (1949).

That purpose would be served here by assessing part of Church's compensation payment against the fund.

The Second Injury Fund statute has been amended several times in recent years. Appellee's second injury having occurred on April 13, 1973, the version of the statute in effect on that date determines the availability of the fund. *Reggep v. Lunder Shoe Products Company*, Me., 241 A.2d 802 (1968). On that date, 39 M.R.S.A. § 57 provided

"If an employee who has previously incurred a permanent incapacity by accidental injury, disease or congenital causes, sustains an industrial injury which in combination with the earlier preexisting

impairment, shall result in total and permanent impairment, the employer shall be liable only for the compensation payable for such second injury. In addition to such compensation and after the completion of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for permanent total incapacity, out of a special fund known as the 'Second Injury Fund', and created for such purpose in the following manner:

"In every case of the death of an employee under this Act where there is no person entitled to compensation, the employer shall pay to the Industrial Accident Commission the sum of $1,500, to be deposited with the Treasurer of State for the benefit of said fund, and the commission shall direct the distribution thereof."

The statute uses several terms that ordinarily have a technical meaning when used in the Workmen's Compensation Act. The terms "incapacity" and "impairment" are used in sections 54 and 56 of title 39 with specific meanings. "Incapacity" refers to a reduced ability to earn wages whereas impairment refers to loss of function. In construing the statute, the Commission relied on those technical meanings and determined that the employee's injury was not a qualifying second injury for purposes of section 57. The Commission reasoned that prior to the second injury the employee had been able to work full time as a carpenter and was not suffering from "incapacity". Thus, the Commission found that appellee's pre-existing injury did not qualify under the version of the section which was in effect in 1973.

The Commission's construction had the effect of limiting the availability of the Second Injury Fund in a way that is inconsistent with the purpose behind the fund. If employers were fully liable for total and permanent impairment that is partly attributable to a pre-existing permanent impairment, they would be less inclined to hire an individual with such a handicap. Thus, the Commission's construction tends to defeat the purpose of the statute.

■ The language of the statute when considered in light of the statutory purpose and its legislative history convinces us that the word "incapacity" in section 57 should not be regarded as having the technical meaning that it has in sections 54 and 56 of the Act but rather should be regarded as synonymous with the term "impairment." On its face, section 57 is ambiguous with respect to what pre-existing condition of the employee suffices to bring the provisions of the section into play. After first using the expression "previously incurred a permanent incapacity," the section refers later to the condition as "the earlier pre-existing impairment." Thus, it is unclear from the language of the section itself whether the legislature meant "incapacity" in its technical sense or "impairment."

■ The purpose of the statute is to encourage employers to hire handicapped individuals. *Gagnon's Case, supra.* That purpose is best served by a construction which resolves the ambiguity in the section in favor of permanent impairment, not technical incapacity, as the employee's condition required to make the section operative. Terms in a statute must be construed in light of the subject matter, purpose of the statute, and the consequences of a particular interpretation. *Finks v. State Highway Commission,* Me., 328 A.2d 791 (1974). Thus, the statute must be construed to require only a pre-existing permanent impairment, not permanent incapacity in the technical sense.

The history of section 57 supports this construction. Before 1971 the first sentence of the section read as follows:

"If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the employer shall be liable only for the compensation payable for such second injury."

Each of the previous injuries listed was a permanent impairment. The loss, or loss of use of, another "member or organ" involved

a second impairment. The Fund became available if the two permanent impairment injuries resulted in the employee's becoming "permanently and totally incapacitated." The language of the pre-1971 version of section 57 sheds light on the legislature's intent and purpose in enacting chapter 320 of the Public Laws of 1971. The legislature clearly intended to expand the kinds of pre-existing conditions which an employee could have and still be eligible for compensation from the Second Injury Fund. The history of the 1971 amendment to the section indicates that the pre-existing injury contemplated by the statute was a permanent impairment.

Since this case arose, the legislature has cleared up the ambiguity in section 57 by substituting "impairment" for "incapacity." P.L.1975, ch. 749, § 5. The clarified meaning is consistent with our construction of the statute as it stood at the time of appellee's injury.

■ The Second Injury Fund should pay its portion of the employee's compensation.

The entry is:

Appeal sustained.

Pro forma judgment of the Superior Court vacated, with instructions to remand to the Industrial Accident Commission for further proceedings not inconsistent with this opinion.

It is further ordered that appellant pay to appellee employee $550 for his counsel fees, plus his actual reasonable expenses of this appeal.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.