Ramona COATES

v.

MAINE EMPLOYMENT SECURITY COMMISSION et al.

Supreme Judicial Court of Maine.

Sept. 27, 1979.

Asen & Landis by Peter J. Landis (orally), Portland, for plaintiff.

Patricia M. McDonough (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

■ Claimant Ramona Coates appeals from a judgment entered in the Superior Court (Kennebec County) affirming the decision of the Maine Employment Security Commission denying her claim for unemployment benefits. The Commission determined that she was, under 26 M.R.S.A. § 1193(1)(A), disqualified from receiving benefits, on the ground that she had left her "regular employment voluntarily without good cause attributable to such employment," the disqualification to continue "until claimant has earned $200." Claimant asserts that the Commission's finding of "voluntary quit" was clearly erroneous and that, even if she had voluntarily quit, the Commission applied the wrong statute defining the period of her disqualification. Because the Commission should have applied the disqualification provision in effect at the time claimant left her job, and not the amended provision in effect when she filed her claim, we sustain her appeal.

Beginning in February 1976 Mrs. Coates was employed as a stitcher at C. F. Hathaway Company (hereafter "Hathaway"), a shirt manufacturer in Dover-Foxcroft. On Monday, September 19, 1977, she informed her employer that she intended to leave her job, and on Friday of that week (September 23) she did so. Some thirteen weeks later, she first applied for unemployment benefits starting for the week ended December 24, 1977. A deputy determined that Mrs. Coates had left her employment "voluntarily without good cause attributable to such employment" and was thus disqualified from receiving benefits under section 1193(1)(A). On the date she left work, that statute provided in relevant part:

**Disqualification**

An individual shall be disqualified for benefits:

**1. · Voluntarily leaves work.**

**A.** For the week in which he left his regular employment voluntarily without good cause attributable to such employment, . . . *and disqualification shall continue for 12 weeks immediately following such week or until claimant has earned 8 times his weekly benefit amount, whichever occurs first.* (Emphasis added)

On October 24, 1977, that is, a full month after she left work at Hathaway, P.L.1977, ch. 472 went into effect. That new law repealed the first sentence of section 1193(1)(A) and enacted in its place a disqualification reading in relevant part:

For the week in which he left his regular employment voluntarily without good cause attributable to such employment, . . . *and disqualification shall continue until claimant has earned 4 times his weekly benefit amount* . . . . (Emphasis added)

Relying on the new disqualification provision in effect at the time Mrs. Coates made her claim, the deputy further determined that claimant's disqualification, which had commenced on September 23, 1977, should continue until claimant had earned $200—*i. e.*, four times her "weekly benefit amount" of $50.

Mrs. Coates appealed from the denial of benefits and continued to report each week to the Employment Security Commission office. On March 27, 1978, she returned to a full-time job with another employer. Be-

tween the time she left Hathaway and the time she found new employment, she worked only briefly at harvesting, earning less than $150. After hearing, the Commission's appeal tribunal affirmed the deputy's determination that Mrs. Coates was disqualified under section 1193(1)(A) and that the disqualification would continue until she had earned $200; and on further administrative appeal, the full Commission again affirmed.

Claimant then took a timely appeal to the Superior Court. She there raised two arguments, both of which the Superior Court rejected. First, she challenged the sufficiency of the evidence to support the Commission's conclusion that she left work "voluntarily without good cause." Second, she asserted that, even if the Commission were factually correct in finding that the "voluntary quit" disqualification applied to her, the Commission, in fixing its duration, should have applied the statutory provision that was in effect on the date she left work at Hathaway, rather than the new provision that went into effect after she left Hathaway but before she filed her claim for unemployment benefits.

Before this court, claimant asserts error in the denial of her appeal upon the same two grounds that she urged in the Superior Court. We agree with claimant that the Commission applied the wrong provision for the duration of her disqualification and accordingly sustain the appeal. Because claimant did not file for benefits until after the thirteen-week disqualification period had expired, see 26 M.R.S.A. § 1192(1) (Supp.1978), we do not review the correctness of the Commission's finding that she had on September 23, 1977, left her "regular employment voluntarily without good cause" within the meaning of section 1193(1)(A), both in its pre-October 24 and post-October 24, 1977, forms. Even if that decision were factually correct—a question we do not address—she had by the properly applicable law become qualified by the time of her first claim for benefits for the week ended December 24, 1977.

■ The "voluntary quit" disqualification provision in effect on September 23, 1977, provided that Mrs. Coates was disqualified for thirteen weeks or until she had earned $400 (i. e., eight times her "weekly benefit amount"), whichever occurred first. Thus, under the old law Mrs. Coates' disqualification expired after thirteen weeks. On the other hand, under the new disqualification law—which the Commission applied —Mrs. Coates would be continuously disqualified for unemployment benefits because in the whole period until she resumed full-time employment in March 1978 she did not earn an aggregate of $200 (i. e., four times her "weekly benefit amount").

Claimant asserts that the decision of the Commission applies the post-October 24, 1977, version of the section *retroactively* to the events of September 23, 1977, the day she quit her job, and is contrary to law because P.L.1977, ch. 472 was not intended to have retroactive application. In *State Comm'n on Human Relations v. Amecon Division of Litton Systems, Inc.*, 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976), the Maryland Court of Appeals defined retroactive application of a statute as follows:

[A] statute, although applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, *when applied so as to determine the legal significance of acts or events that occurred prior to its effective date*, applied retroactively. (Emphasis added)

See Greenblatt, "Judicial Limitations on Retroactive Civil Legislation," 51 *Nw.U.L. Rev.* 540, 544 (1956); 1 Cooley, *Constitutional Limitations* 136 (8th ed. 1927). The application by the Commission of P.L.1977, ch. 472, which did not become effective until October 24, 1977, to impose upon claimant a disability for her conduct in leaving her job a month earlier significantly altered the legal consequences of such conduct and thus amounted to a retroactive application of the new statute.

■ The question which we address is whether the legislature, in enacting the amendment to section 1193(1)(A), intended it to apply to any subsequent claimant who

had voluntarily left his employment *before* the effective date of the amendment. In resolving that question, we are aided by "the fundamental rule of statutory construction strictly followed by this court that all statutes will be considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used." *Miller v. Fallon*, 134 Me. 145, 148, 183 A. 416, 417 (1936). *See Bowman v. Geyer*, 127 Me. 351, 354, 143 A. 272, 273–74 (1928). Recently we stated that we would apply the rule of construction favoring prospective application "in the absence of strong, clear and imperative language indicating a legislative mandate that the new legislation be given retrospective applicability." *Barrett v. Herbert Engineering, Inc.*, Me., 371 A.2d 633, 635 n. 1 (1977).

We find nothing in the language of the amendment to indicate any such intention on the part of the legislature. Nor do we find any such expression of legislative intent stated or implied elsewhere in the Employment Security Law. The plain import of the section under consideration is that, by virtue of the circumstances surrounding a claimant's separation from work, the disqualification imposed by subsection (1)(A) attached on the very day "he left his regular employment voluntarily without good cause attributable to such employment." In both versions of subsection (1)(A), the whole focus of the substantive provision of law disqualifying a claimant from unemployment benefits is his action in leaving his regular employment. The facts of that critical event determine whether a claimant is barred by the "voluntary quit" disqualification. The focus of subsection (1)(A) is not at all on the time the claimant files his claim. In such circumstances we are not persuaded that the legislature meant by its October 24, 1977, enactment to work any change in the legal significance of the focused-upon event (namely, the "vol-

untary quit") if it occurred before October 24, 1977.

At the time Mrs. Coates left her job at Hathaway—we assume in a "voluntary quit"—the statute specified the *maximum* adverse consequences of her action: disqualification from unemployment benefits for thirteen weeks. That was just as true whether she filed her claim for benefits on the day she left work, or on December 19, 1977, or never. Having waited out the maximum statutory period, she was no longer disqualified from receiving benefits and had only to file her claim and to satisfy the Commission that she was otherwise eligible under the provisions of section 1192. That is precisely what she did.

At oral argument the Commission's counsel stipulated that claimant was qualified to receive benefits under every provision of the Employment Security Law other than section 1193(1)(A). Therefore, claimant is entitled to the relief she requested in her complaint.

The entry will be:

Appeal sustained.

Remanded to the Superior Court for vacation of the judgment appealed from and for entry of judgment (i) sustaining claimant's appeal from the Maine Employment Security Commission, (ii) reversing the Commission's decision, and (iii) remanding to the Commission with direction to allow unemployment benefits to claimant in the amount of $700.

Costs on appeal allowed to claimant.

ARCHIBALD, J., did not sit.