Ray D. WENTZELL

v.

TIMBERLANDS, INC. and Liberty
Mutual Insurance Company and
Second Injury Fund.

Supreme Judicial Court of Maine.

April 2, 1980.

Berman, Berman & Simmons, P. A., Jack
H. Simmons, Robert A. Laskoff (orally),
Lewiston, for plaintiff.

Richardson, Hildreth, Tyler & Troubh,
Ronald D. Russell (orally), for Timberlands,
Inc.

John W. McCarthy, Asst. Atty. Gen.
(orally), Augusta, for Second Injury Fund.

Before McKUSICK, C. J., and WER-
NICK, GODFREY, NICHOLS and GLASS-
MAN, JJ.

GLASSMAN, Justice.

The appellants, Timberlands, Inc. and
Liberty Mutual Insurance Company, appeal
from a pro forma decree of the Superior
Court, Oxford County, which affirmed a
decision of the Workers' Compensation
Commission dated March 15, 1979. The
Commission dismissed the appellants' "Peti-
tion To Invoke Section 57" (39 M.R.S.A.
§ 57), the Second Injury Fund provision of
the Workers' Compensation Act, on the al-
ternative grounds that it was without juris-
diction to hear the petition or, assuming
jurisdiction, that the petition was barred by
the doctrine of res judicata. We affirm the
judgment.

On April 28, 1975, Ray Wentzell sustained
an injury to his shoulder and hand arising
out of and in the course of his employment
with Timberlands, Inc. Under an agree-
ment dated May 13, 1975, Wentzell received
compensation for one hundred percent dis-
ability from Liberty Mutual Insurance
Company, the insurance carrier of the em-

ployer. Wentzell's attempt to return to work prompted the filing of a signed discontinuance on August 10, 1975. His attempt to return to work proved unsuccessful and, on August 27, 1975, the parties executed a supplemental agreement under which Wentzell was again paid compensation benefits for one hundred percent disability.

On December 8, 1975, the carrier filed with the Commission a petition for review of incapacity and, on March 19, 1976, Wentzell filed a petition to determine the extent of permanent impairment. After a joint hearing on these petitions, the Commission, on March 30, 1976, dismissed the petition for review and ruled that Wentzell was totally incapacitated and was entitled to benefits for 42.5 percent permanent impairment of his right arm.

The employer and its insurance carrier filed the petition giving rise to this appeal on November 30, 1978, asserting that although Wentzell was totally and permanently impaired the industrial injury had combined equally with a previously incurred permanent impairment to cause his current permanent and total impairment. Accordingly, the appellants prayed that the Commission assess fifty percent of Wentzell's weekly disability payments to the Second Injury Fund. Wentzell moved to dismiss this petition on the grounds that it was unauthorized by the Maine statute and, furthermore, that the action was barred by the doctrines of res judicata and collateral estoppel. In granting the motion to dismiss, the Commission ruled that it lacked jurisdiction to hear the petition and, alternatively, that res judicata precluded the action.

■ The Commission's decision contained the following factual finding which is not contested:

> On a number of different occasions, both by agreement and by Commission decree, the Commission found the employee to be 100% disabled and ordered the employer to pay full benefits.

On each of those different occasions, the issues before the Commission were the extent of the employee's incapacity and whether the employer and its insurance carrier were liable for that incapacity. The employer and its insurance carrier were free on each of those occasions to assert that the present incapacity was the result in part of a preexisting permanent impairment and thereby possibly reduce the extent of their liability. No such assertion was ever made. On principles analogous to res judicata and collateral estoppel, the employer and its insurance carrier are now estopped from instituting an independent proceeding for the purpose of reducing the extent of their liability. See Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977).

The employer and its insurance carrier assert that to preclude them from now raising this issue is unfair since they may not have been aware of any preexisting impairment at the time of the prior Commission action. Of course, if the employer and its insurance carrier had shown they were not aware of the prior permanent impairment and should not have been aware of it at the time of the earlier proceedings, this might very well call for an exception to the rule of preclusion. See id., § 68.1(e)(iii). No showing was made that at the time of the earlier proceedings the employer and its insurance carrier were unaware of the preexisting impairment, that the preexisting impairment had been concealed by the employee, or that it was reasonable for the employer to be unaware of such preexisting condition. In the absence of such a showing, there is no occasion to consider the application of any exception to the rule of preclusion in the instant case.

Although not directly involved in the resolution of the issue before us, we note the patent ambiguity of the statute establishing the Second Injury Fund and defining the circumstances under which it shall be liable. Section 57 of 39 M.R.S.A. provides in pertinent part:

> If an employee, who has previously incurred a permanent impairment by injury, disease or congenital causes, sustains an industrial injury which in combination with the earlier preexisting permanent

impairment shall result in total permanent impairment, the employer shall be liable only for the compensation payable for such second injury. *In addition to such compensation and after the completion of the payments therefor*, the employee shall be paid the remainder of the compensation that would be due for permanent total impairment, out of a special fund known as the 'Second Injury Fund,' . . . . *Id.* (Emphasis added).

The clear import of the language is that the Second Injury Fund will commence to make payments only after completion of the payments by the employer. At one time, this provision made sense since there was a limit on the number of weeks that payments could be made under either 39 M.R.S.A. § 54 or 39 M.R.S.A. § 55. In 1965, the limit on payments under Section 54 was removed. *See* P.L. 1965, ch. 408, § 3. In 1973, the limit on payments under Section 55 was removed. *See* P.L. 1973, ch. 531, § 1. Under the present statutory arrangement, payments under Section 54 or Section 55 may continue for the life of the worker if the incapacity continues for that period of time. In such circumstances, the emphasized language in the quotation above creates an obvious ambiguity.

The appellants suggest that we should construe Section 57 as requiring an apportionment on a percentage basis whereby the percentage of incapacity attributable to the second injury would be paid by the employer and the percentage of incapacity attributable to the preexisting injury would be paid for by the Second Injury Fund. The Attorney General, appearing on behalf of the Second Injury Fund, suggests that Section 57 should be construed to impose primary liability for the total incapacity on the employer, with the employer having a right of contribution from the Second Injury Fund. The Attorney General asserts that this interpretation is required to assure that the worker receives full compensation because of the potential insolvency of the Second Injury Fund due to the manner in which it is financed. *See* 39 M.R.S.A. §§ 57, 57–A(3). Neither interpretation is consistent with the language of Section 57,

and there is serious question as to whether either interpretation is consistent with the overall legislative purpose. Moreover, we would hesitate to adopt the interpretation suggested by the Attorney General since it would necessitate incorporating into the Workers' Compensation Act the intricacies of third-party practice presently available in ordinary personal injury litigation. *See* M.R.Civ.P. 14; *see, e. g., Packard v. Whitten*, Me., 274 A.2d 169 (1971).

We are mindful of our responsibility, when it is necessary to decide a dispute which is properly before us, to resolve any ambiguity in the statutory scheme resulting from the legislature's failure to harmonize the various provisions of the Workers' Compensation Act. *See, e. g., Liberty Mutual Insurance Co. v. Weeks*, Me., 404 A.2d 1006, 1009 (1979). Yet, unlike fields such as torts and contracts in which the law has generally developed through judicial decision, the law of workers' compensation is uniquely statutory. Since the Workers' Compensation Act is a creation of the legislature, the legislature bears the primary responsibility for enunciating with clarity the purposes it intends to achieve through that statute. Although we will not shrink from fulfilling our responsibility to construe Section 57 when it is required in an appropriate case, a construction of that section is not necessary to our decision here. There is ample opportunity for the legislature, by appropriate amendment, to clarify the purpose of this statutory provision.

The entry is:

Appeal denied.

Judgment affirmed.

It is ordered that the appellants pay to the appellee an allowance of $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

POMEROY and ARCHIBALD, JJ., did not sit.