Nelson v. LEVESQUE

v.

ACL ENTERPRISES, INC. and American Mutual Insurance Co. and Second Injury Fund.

Supreme Judicial Court of Maine.

Argued Sept. 4, 1980.

Decided Nov. 3, 1981.

Dunleavy Law Offices, Kurt M. Meeuwenberg, (orally), Presque Isle, for plaintiff.

Mitchell & Stearns, John A. Woodcock, Jr., (orally), Kevin M. Cuddy, Bangor, Charles Devoe, Steven F. Wright, (orally), Asst. Attys. Gen., Augusta, for respondent appellee Second Injury Fund.

Before McKUSICK, C. J., and WERNICK,* GODFREY, NICHOLS, GLASSMAN,** and ROBERTS, JJ.

ROBERTS, Justice.

In *Wentzell v. Timberlands, Inc.*, Me., 412 A.2d 1213 (1980) we criticized the language of 39 M.R.S.A. § 57 (Second Injury Fund). Although section 57 has been amended,[1] we are again asked to interpret its former provisions. While we "will not shrink from fulfilling our responsibility to construe Section 57" despite our reluctance to intrude in an area so uniquely statutory as the Workers' Compensation Act, *id.* at 1215, we need not go beyond our prior opinions in deciding this case.

Nelson D. Levesque, his employer, ACL Enterprises, Inc., and its insurer, Amerian Mutual Insurance Co., appeal from the Workers' Compensation Commission's denial of two petitions filed by the employer. ACL Enterprises disputes the Commissioner's interpretation of section 57 as conditioning liability of the Second Injury Fund upon proof of the employee's permanent total incapacity.[2] Levesque and the Attorney General, representing the Second Injury Fund, agree with the Commissioner's interpretation, and they argue in the alternative that because the Commissioner erred in finding a preexisting permanent impairment section 57 is not here applicable. Because we agree with the latter contention, we affirm the denial of both petitions without further consideration of the statute.

In June 1977 Levesque sustained a compensable injury in a fall while employed by ACL Enterprises, and received compensation for total incapacity under an approved agreement. In December 1977 ACL Enterprises filed a petition for review of incapacity. As a result of medical testimony indicating that Levesque had a preexisting congenital bone condition known as exostosis, ACL Enterprises filed a second petition in October 1978 for award from the Second Injury Fund. Further hearings were held on both petitions.

The Commissioner's denial of the petition for review of incapacity was based on the following conclusions:

1. Nelson Levesque suffers from a permanent impairment due to disease (exos-

---

* Wernick, J., sat at oral argument and participated in the initial conference, but retired prior to the adoption of this opinion.

** Glassman, J., sat at argument and participated in the initial conference but died before the opinion was adopted.

1. P.L. 1981, Chapter 474.

2. 39 M.R.S.A. § 57 (1978) as applicable here provided in part:
    If an employee, who has previously incurred a permanent impairment by injury, disease or congenital causes, sustains an industrial injury which in combination with the earlier preexisting permanent impairment shall result in total permanent impairment, the employer shall be liable only for the compensation payable for such second injury. In addition to such compensation and after the completion of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for permanent total impairment, out of a special fund known as the "Second Injury Fund"....

tosis) which pre-existed his injuries sustained on May 12, 1977.

2. As a result of the fall he sustained on May 12, 1977, he suffered a ruptured intervertebral disc.

3. At the time of the last hearing in April 1979, he was almost wholly incapacitated from gainful employment by the combined effects of the exostosis and the effects of the fall which continues to be a substantial causative factor of his incapacity.

4. He has made substantial good faith efforts to find suitable employment, but has failed because of his disabilities.

He denied the petition for award from the Second Injury Fund "because the evidence does not establish at this time that Nelson Levesque is permanently totally incapacitated from gainful employment."

All parties agree with the Commissioner's use of the term "incapacity" rather than "impairment" in describing the worker's *resulting condition*. Title 39 does not define the terms, but we have previously recognized that "incapacity" refers to reduced ability to earn wages whereas "impairment" refers to loss of function. *Church v. McKee*, Me., 387 A.2d 754, 756 (1978). "Permanent total impairment," literally read, would make the fund available only to a completely paralyzed worker; if "incapacity" is substituted, the fund becomes available to a worker completely unable to earn wages.[3]

The parties also agree that the evidence supports the finding that Levesque had a preexisting congenital bone condition. Levesque and the Attorney General contend, however, that no evidence supports the finding that the condition was a permanent impairment within the meaning of section 57. We need not here delimit the language of section 57—we decide only that "preexisting permanent impairment" does not include a preexisting congenital condition which was not disabling before the compensable injury. ACL Enterprises does not dispute that Levesque is entitled to full compensation. *See Wadleigh v. Higgins*, Me., 358 A.2d 531 (1976). Rather, it contends that the Second Injury Fund should contribute to that compensation. If Levesque's condition of exostosis (admittedly preexisting and permanent) was an impairment, ACL Enterprises is correct. *Church v. McKee*, Me., 387 A.2d 754 (1978).

■ The purpose of section 57 is to encourage employers to hire handicapped individuals. *Id.* at 756. For example, the statute would apply to an employee who had previously incurred a permanent 75% loss of hand function, even though that loss had not occasioned any prior incapacity to work. Thus, the word "impairment" as used in the term "preexisting permanent impairment" *should* be given its technical meaning of loss of function. We look to the record herein for evidence to support a finding of prior loss of function.

■ The only medical testimony of Levesque's condition before the accident came from Dr. McGinn, who had not seen Levesque during the 13 years preceding the accident. Levesque's own testimony provides no evidence that he was impaired or disabled before the accident. Testimony of Dr. McGinn and Dr. Osgood relating to pre-accident limitations on Levesque's activities cannot be interpreted as evidence of disability or loss of function; those witnesses expressed only their opinions that Levesque should have limited his activities be-

**3.** ACL Enterprises also argues that the term "*permanent* total incapacity" refers solely to the specific injuries enumerated in section 54, *i. e.*, these injuries which are *presumed to be permanent*. The period of incapacity for all other injuries is always subject to review and thus these injuries are not "permanent." ACL Enterprises argues that by prior amendment of section 57 to eliminate both enumerated specific injuries and references to other statutory sections, the Legislature intended it to apply more broadly to *any* total incapacity, even if the incapacity is not medically permanent. Thus, ACL Enterprises invites us, in effect, to delete "permanent" from "permanent total incapacity." While Levesque and the Attorney General agree that section 57 is ambiguous and imprecise, they argue that the Legislature did not intend to eliminate the traditional requirement of permanency. As we indicated in the text, we need not reach this issue.

cause his condition exposed him to serious harm in the event of an accident.[4] It was that potential for injury, rather than any loss of function, which was Levesque's sole limitation. We hold therefore that this record will not support a finding of prior impairment so as to trigger section 57. The petition for contribution from the Second Injury Fund was properly denied.

The entry is:

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00 together with his reasonable out-of-pocket expenses for this appeal.

All concurring.

4. Dr. McGinn defined Levesque's condition of multiple congenital exostosis as follows: "[The condition] tends to weaken the joints and a strain will be a more aggravated and prolonged many times in people with this condition." McGinn described Levesque as prone to suffer injuries and testified in relation to his work capacity that he was "doing work he should not be doing." Dr. Osgood testified that biologically Levesque has a real handicap and that someone else might not have sustained as much injury.