Peter A. **TERRY**

v.

**ST. REGIS PAPER CO.**

Supreme Judicial Court of Maine.

Argued March 14, 1983.

Decided May 12, 1983.

Mitchell & Stearns, Samuel W. Lanham, Jr. (orally), Peter M. Weatherbee, Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

Employee Peter A. Terry appeals from a judgment of the Appellate Division of the Workers' Compensation Commission (Appellate Division) which reversed a decision of the Workers' Compensation Commission. Terry contends that a 1981 legislative ceiling on maximum workers' compensation benefits does not apply retroactively to pre-enactment injuries. Because we find that the Legislature did not intend the 1981 ceiling to apply retroactively, we reverse the Appellate Division.

## I.

Terry, an employee of St. Regis Paper Company, sustained a compensable back injury on January 14, 1981 and began receiving benefits for total incapacity beginning the next day pursuant to an agreement approved by the Workers' Compensation Commission. Terry's benefit level was initially governed by P.L. 1975, ch. 493, codified at 39 M.R.S.A. § 54 (1978), which became effective October 1, 1975. That act raised the ceiling on workers' compensation benefits from the state average weekly wage to 133⅓% of the average wage on July 1, 1977, 166⅔% of the average wage on July 1, 1979, and 200% of the average wage on July 1, 1981.

On June 22, 1981, the Legislature enacted P.L.1981, ch. 483 ("the 1981 amendment"),[1] codified at 39 M.R.S.A. § 54 (Supp.1982), as emergency legislation to amend 39 M.R.S.A.

McTeague, Higbee & Libner, Maurice A. Libner (orally), Charles R. Priest, Brunswick, for plaintiff.

1. The amended statute reads in pertinent part:

While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, but not more than 166⅔% of the average weekly wage in the State as computed by the Employment Security Commission; nor less than $25 weekly; and such weekly compensation shall be adjusted annually on July 1st so that it continues to bear the same percentage relationship to the average weekly wage in the State as computed by the Employment Security Commission, as it did at the time of the injury . . . .

§ 54 effective immediately. The new act was intended, according to the emergency preamble, to "negate" the increase in maximum benefits which was to occur nine days later. It capped the benefit level at 166⅔% of the state average weekly wage.

On July 1, 1981, St. Regis continued to pay Terry 166⅔% of the average weekly wage; Terry responded by filing a "Petition to Fix Benefit Level" at the 200% of average wage he anticipated under the earlier legislation. The Workers' Compensation Commissioner, concluding that the Legislature did not intend the 1981 amendment to be retroactive, and that if it did, such retroactivity would be unconstitutional, granted Terry's petition. St. Regis's appeal to the Appellate Division was sustained in an opinion which held that the 1981 amendment was intended to be retroactive and could constitutionally be retroactively applied. On December 22, 1982, we granted Terry's Petition for Appellate Review.

## II.

In granting Terry's petition for review, we ordered that the following issues be prepared for argument: (1) whether application of the 1981 amendment to Terry would constitute retroactive application, (2) whether the Legislature intended the 1981 amendment to apply retroactively, and (3) whether retroactive application would satisfy the requirements of the Maine and United States Constitutions. Our conclusion, however, does not require that we reach the constitutional issues.

### A. Retroactivity

██ We recently noted that a statute is considered retroactively applied "when applied so as to determine the legal significance of acts or events that occurred prior to its effective date . . . ." *Coates v. Maine Employment Security Commission,* 406 A.2d 94, 96 (Me.1979) (quoting *State Commission on Human Relations v. Amecon Division of Litton Systems, Inc.,* 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976)).

In *Coates,* the plaintiff left work under a statute requiring her to wait thirteen weeks before collecting unemployment compensation. Prior to the date Coates expected to receive her benefits, the legislation was amended to, effectively, substantially extend her waiting period. We held there that application of the new statute to the plaintiff constituted retroactive application, as it altered the consequences of her having left work under the old statute.

Two workers' compensation cases suggest the same conclusion in the instant case. In *Reggep v. Lunder Shoe Products Co.,* 241 A.2d 802, 804 (Me.1968), we noted that a worker's right to workers' compensation becomes vested on the date of injury "and cannot be reduced or enlarged by legislation enacted subsequent to that date." (citation omitted).

St. Regis contends that *Reggep* dealt only with statutory provisions "already in effect at the time of the injury" and that in the instant case the 200% ceiling was not yet "in effect." *Bernard v. Cives Corp.,* 395 A.2d 1141 (Me.1978), however, answers that objection. In *Bernard,* we held that workers injured after the ceiling escalation bill was enacted but prior to July 1, 1977, the date on which the first escalation (to 133⅓%) was to occur, were "entitled to the benefit of each periodic escalation of the ceiling stated in the statute until their rates of compensation reach 200% of the statewide average weekly wage as computed July 1, 1981 . . . ." *Id.* at 1144. We thus rejected the employer's argument that the ceiling escalation statute prescribed separate effective dates for each escalation and ruled that the *entire* statute became effective as of October 1, 1975. *Id.* at 1147–48.

Application of the 1981 amendment's 166⅔% benefit ceiling to persons who, like Terry, were injured prior to the amendment's enactment would significantly alter the legal significance of their having been injured while the 1975 ceiling escalation statute was still in effect. Application of the 1981 amendment to Terry would therefore constitute retroactive application.

### B. *Legislative Intent*

█ In determining whether to apply the 1981 amendment retroactively to Terry, we are guided by "the fundamental rule of statutory construction strictly followed by this Court that all statutes will be considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used." *Coates,* 406 A.2d at 97 (quoting *Miller v. Fallon,* 134 Me. 145, 148, 183 A. 416, 417 (1936)); *Estate of Pope,* 103 Me. 382, 384–85, 69 A. 616, 617 (1908); *Hastings v. Lane,* 15 Me. 134, 135 (1838); *see Uniform Statutory Construction Act* § 14, 14 U.L.A. 524 (1980); 73 Am. Jur.2d, *Statutes* §§ 350–51. That rule requires the Legislature to express its intent to apply a statute retroactively in "strong, clear and imperative language," *Barrett v. Herbert Engineering, Inc.,* 371 A.2d 633, 635 n. 1 (Me.1977); *Langley v. Home Indemnity Co.,* 272 A.2d 740, 746–47 (Me. 1971); we will only imply a retroactive intent when the statute "would be inoperative other than retrospectively." *Casto v. Greer,* 44 W.Va. 332, 334, 30 S.E. 100, 101 (1898), *quoted in Miller,* 134 Me. at 150, 183 A. at 418.

█ The 1981 amendment itself contains no express indication of legislative intent regarding possible retroactive application. Nor do we find any such expression necessarily implied in the amendment, as the amended statute is equally operative whether applied prospectively or retroactively, in terms of both internal consistency and actual effect. The language of the amendment thus fails to persuade us that the Legislature intended to apply the 166⅔% benefit ceiling retroactively.

Because the 1981 amendment is unambiguous on its face and carries no necessary implication of retroactive application, we need not look behind the statutory language to either the amendment's emergency preamble, *see In re Camden Shipbuilding Co.,* 227 F.Supp. 751, 753 (D.Me.1964); *Harlow v. Young,* 37 Me. 88, 91 (1854), or its legislative history. *See Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.,* 411 A.2d 1017, 1020 (Me.1980). However, even an examination of the 1981 amendment's legislative background fails to reveal the requisite clear expression of the legislative intent.

The emergency preamble merely notes that "the stabilization contemplated by this bill would negate [the] increase" in the benefit ceiling scheduled to occur on July 1, 1981. The preamble makes no mention whatever of whether that stabilization was intended to apply to workers injured prior to the amendment's effective date.

Although the legislative debate over the 1981 amendment does reveal the Legislature's concern about the high cost of workers' compensation premiums in Maine, no consensus appears to have emerged regarding the amendment's possible retroactivity. Two representatives expressed their concern that retroactive application would be unconstitutional, while another insisted that application of the amendment to all workers, regardless of their date of injury, posed no constitutional problems. Leg.Rec. 1628–31 (June 11, 1981). We are unable to find, in those statements, any clear expression of legislative intent favoring retroactivity.

Finally, we note that the Legislature was clearly aware of how to create retroactive legislation. The *State of Maine Manual for Legislative Drafting,* (3d ed. 1978), published by the State Director of Legislative Research, gives several examples of retroactivity clauses, *id.* at § 4, p. 251, and the Legislature did incorporate such clauses into legislation enacted contemporaneously with the 1981 amendment. *See, e.g.,* P.L.1981, chapters 463, 465, 487. Neither any of the sample retroactivity clauses nor any comparable language, however, was incorporated into the 1981 amendment itself.

### III

We conclude that, in the absence of strong, clear and imperative language or a necessary implication indicating a legislative intent that the 1981 amendment apply

retroactively, it must be given only prospective effect. We therefore hold that the Appellate Division erred in ruling that the 1981 amendment to 39 M.R.S.A. § 54 applied retroactively to Terry.

The entry is:

Appeal sustained.

Decision of Appellate Division of Workers' Compensation Commission vacated. Remanded to the Appellate Division for entry of the following decision: "Decision of the Commission affirmed."

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.

ROBERTS, J., with whom GODFREY, J., joins, concurring.

The 1981 enactment does not make clear the temporal application of an amendment to the Workers' Compensation Act, P.L. 1981, ch. 483 (amending 39 M.R.S.A. § 54 (Supp.1982–1983)). Because the workers' compensation scheme is a creation of the Legislature, the Legislature itself, rather than this Court, is uniquely equipped to discern the impact of its action and to insure the accomplishment of its purposes. See *American Mutual Insurance Co. v. Murray,* 420 A.2d 251, 252 (Me.1980); *Wentzell v. Timberlands, Inc.,* 412 A.2d 1213, 1215 (Me.1980). Although the reasons for the enactment of chapter 483 are clear, I cannot determine the exact impact of today's decision.

We have previously discussed the complex problems surrounding the concept of "retroactivity." *E.g., Adams v. Buffalo Forge Co.,* 443 A.2d 932, 941–44 (Me.1982). I agree with the Court that in this case St. Regis argues for what amounts to a retroactive application of chapter 483 to Terry. I reach that conclusion, however, only because we have previously held that the ambiguous language of section 54 does not prescribe separate effective dates for each escalation of the compensation ceiling. *Bernard v. Cives Corp.,* 395 A.2d 1141, 1147 (Me.1978). We said in *Bernard* that the Legislature had on occasion used "plain and unequivocal" language to describe the application of an amendment. *Id.* ("This Act shall only apply to injuries occurring after its effective date.") (quoting P.L.1971, ch. 225, § 5). Unfortunately, the Legislature chose no such "clear and unequivocal" treatment of the amendment at issue in the present case.