**Michael K. WEAVER, Plaintiff,**

v.

**NEW ENGLAND MUTUAL LIFE INSURANCE CO. and The New England, Defendants.**

**No. Civ. 99–4–P–C.**

United States District Court,
D. Maine.

May 28, 1999.

Jeffrey Rosenblatt, Berman & Simmons, P.A., Lewiston, ME, for plaintiff.

K. Douglas Erdmann, Pierce Atwood, Portland, ME, for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This action arises out of a dispute related to Disability Income Policy No. D167305 issued by New England Mutual Life Insurance Company and The New England (collectively "New England") to Plaintiff Michael K. Weaver. Plaintiff seeks relief for breach of contract (Count I), declaratory judgment (Count II), unfair claims practices (Count III), fraud (Count IV), intentional infliction of emotional distress (Count V), negligent infliction of emotional distress (Count VI), bad faith (Count VII), malicious conduct (Count VIII), estoppel (Count IX), liability (Count X), and injunctive relief (Count XI). The

Court now has before it New England's Motion to Dismiss (Docket No. 3) Plaintiff's tort, statutory, and equitable claims.

## I. FACTS

The factual allegations taken from the Complaint are as follows. Michael K. Weaver worked for over 27 years in the refrigeration, air-conditioning, and heating business. From 1989 until early 1993, he was a sales engineer employed by Dumont Refrigeration in Monmouth, Maine. In 1990, Mr. Weaver purchased a disability insurance policy from Defendants. The policy provides, in part, that

> "Total Disability" means a disability of the Insured: Which results from sickness or accidental bodily injury of the Insured; and Which prevents the Insured from engaging in the regular occupation of the Insured; even if the Insured is engaged in a different occupation. The regular occupation means the regular occupation of the Insured when Total Disability starts. Total disability may be the result of a sickness which began or an injury which occurred either before or after the Policy was issued; but the sickness or injury must be under treatment by or at the direction of a person, other than you or the Insured, who is licensed to treat the sickness or injury.

Disability Income Policy, attached as Ex. A to Plaintiff's Complaint at § 5.

Sometime in early 1993, Mr. Weaver took a sales position with Phoenix Refrigeration Systems, Inc. where he was expected to manage a branch office in Arkansas. In April 1993, Mr. Weaver terminated his employment as a refrigeration sales engineer with Phoenix Refrigeration Systems when Phoenix canceled its plans for an Arkansas office. Mr. Weaver sought but was unsuccessful in finding, immediate employment in the refrigeration, air-conditioning, and heating business.

When he lost his job in April of 1993, Mr. Weaver telephoned his insurance agent, an agent of the Defendants, and asked for advice on whether he should continue paying the premiums to keep the policy in force or whether, because be was not then earning an income and needed to economize, he should let the policy lapse. The Defendants' agent advised Mr. Weaver that the policy would still protect him in case he became disabled from his regular occupation and that it would be wise to continue the policy in force by making the premium payments. Mr. Weaver took this advice and continued to make premium payments to keep the policy in force. On August 23, 1993, while he was looking for employment, Mr. Weaver was diagnosed with a brain tumor. Mr. Weaver underwent surgery and subsequent treatment for his condition and has been under the care of physicians since August 23, 1993. Mr. Weaver's sickness has, since August 23, 1993, disabled him and prevented him from engaging in work as a sales engineer in the refrigeration and air-conditioning business.

Mr. Weaver applied for, and was paid by New England, monthly disability benefits under the policy for the period from November 23, 1993, (after the expiration of the 90–day "waiting period") through April 23, 1995, when New England terminated its payment of benefits. When his benefits were terminated, New England told Mr. Weaver that his "regular occupation" at the time his disability began was "unemployed person" and that, therefore, he was not "disabled" under the policy since his condition did not prevent him from being an unemployed person. Sometime, it is not clear whether it was before or after the payment of benefits was terminated, New England accused Mr. Weaver of malingering and of unethically trying to obtain benefits under the policy.

## II. DISCUSSION

In a motion to dismiss brought under 12(b)(6), the Court takes all of Plaintiff's factual averments as true and indulges

every reasonable inference in Plaintiff's favor. *Talbott v. C.R. Bard, Inc.,* 63 F.3d 25, 27 (1st Cir.1995). The Court may grant Defendants' Motion to Dismiss "only if it clearly appears, according to the facts alleged, that the Plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990).

## A. Count III—Unfair Claims Settlement Practices

Defendants move to dismiss Mr. Weaver's claim under Maine's Unfair Claims Practices Statute, 24–A M.R.S.A. § 2436–A,[1] arguing that the version of the statute in effect in 1995, when Plaintiff's benefits were terminated, did not apply to claims brought under disability insurance policies. Plaintiff responds that the current version of § 2436–A, which does apply to disability insurance policies, provides the basis for his claim. Two possible lines of reasoning underlie Plaintiff's argument: first, that the denial of benefits remains ongoing today; second, that the current version of the statute should be retroactively applied.

The Court will consider each argument in turn.

■ The "Application" section of the repealed version of the statute, in effect in 1995 when New England terminated Mr. Weaver's disability benefits, provided that "[t]his section does not apply to health or life insurance or workers' compensation claims." 24–A M.R.S.A. § 2436–A(4) (1995). At that time, disability insurance fell within the statutory definition of health insurance. *See* 24–A M.R.S.A. § 704.[2] Hence, in 1995, § 2436–A did not apply to disability insurance policies. The 1997 amendment to § 2436–A(4), the version of the statute currently in effect, exempts only "workers' compensation claims" and is thus applicable to disability insurance.

Plaintiff argues that the denial of benefits remains ongoing today and, therefore, that the current version of 24–A M.R.S.A. § 2436–A, which applies to disability insurance policies, provides him with a cause of action. Plaintiff asserts that the current version of the statute applies because Defendants continue to refuse to pay his disability claim. Plaintiff's Complaint in-

1. 24–A M.R.S.A. § 2436–A now provides:

   1. **Civil actions.** A person injured by any of the following actions taken by that person's own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month;

   A. Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue;

   B. Failing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy;

   C. Threatening to appeal from an arbitration award in favor of an insured for the sole purpose of compelling the insured to accept a settlement less than the arbitration award;

   D. Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim; or

   E. Without just cause, failing to effectuate prompt, fair and equitable settlement of

   claims submitted in which liability has become reasonably clear.

   2. **Without just cause.** For the purposes of this section, an insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed.

   3. **No limitation on other cause of action.** Nothing in this section prohibits any other claim or cause of action a person has against an insurer.

   4. **Application.** This section does not apply to workers' compensation claims.

2. 24–A M.R.S.A. § 704 provides:

   Health insurance is insurance of human beings against bodily injury, disablement or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto, including provision for the mental and emotional welfare of human beings by defraying the costs of legal services only to the extent provided for in chapter 38.

cludes no allegation of acts committed subsequent to the 1995 decision to terminate disability benefits. Plaintiff's argument, however, suggests that there has never been a final decision made on his disability claim. The current status of the claim is an inevitable result of New England's denial of benefits decision in 1995. The Court concludes that the denial of disability benefits under the policy was finally made in 1995 and there is no ongoing denial today. Since there has not been any action taken by New England after 1995, the Court will not analyze this as an ongoing denial of benefits. The operative date for application of the unfair claims practices statute is 1995 and, at that time, the statute did not apply to disability insurance.

■ The second possible theory underlying Plaintiff's argument raises the issue of retroactive application of statutory amendments. "Generally, a statute will be construed to apply prospectively unless a legislative intent to make it retroactive is clearly stated." *Salenius v. Salenius,* 654 A.2d 426, 429 (Me.1995); *see also Terry v. St. Regis Paper Co.,* 459 A.2d 1106, 1109 (Me.1983) (Absent a clear expression or necessary implication of legislative intent to the contrary, a statute will be presumed to have prospective effect only.); *Coates v. Maine Employment Sec. Comm'n,* 406 A.2d 94, 97 (Me.1979). The 1997 amendment to the unfair claims practices statute is unambiguous on its face and carries no necessary implication of retroactive application. Therefore, the Court will not look behind the statutory language to its legislative history. *See Estate of Stone v. Hanson,* 621 A.2d 852, 853 (Me.1993) (The key to the proper application of a statute is to determine the intent of the legislature from the language of the statute.); *Commissioner of Dept. of Human Services v. Massey,* 537 A.2d 1158, 1159 (Me.1988); *Concord General Mut. Ins. Co. v. Patrons–Oxford Mut. Ins. Co.,* 411 A.2d 1017, 1020 (Me.1980); *Barrett v. Herbert Engineering, Inc.,* 371 A.2d 633, 635 n. 1 (Me.1977).

The 1997 amendment, making the statute applicable to disability claims, is not automatically retroactively applied. Therefore, under either theory fundamental to Plaintiff's argument, the current version of § 2436–A does not apply, and the Court will dismiss Count III of Plaintiff's Complaint.

## B. Count V—Intentional Infliction of Emotional Distress

■ In order to state a claim for intentional infliction of emotional distress, Plaintiff must allege that:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it."

*Colford v. Chubb Life Ins. Co. of America,* 687 A.2d 609, 616 (Me.1996) (citing *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979)) (quoting Restatement (Second) of Torts § 46 (1965)). Defendants contend that the Court should dismiss Plaintiff's claim for intentional infliction of emotional distress because the alleged wrongful conduct is simply breach of an insurance contract for which emotional distress damages are not available. Defendants also contends that the conduct alleged is insufficient to meet the legal standard for pleading a claim for intentional infliction of emotional distress because, assuming the facts alleged by Plaintiff, Defendants' acts do not rise to the level of extreme and outrageous.

■ Although Defendants correctly point out that Maine law holds that challenges to an insurer's benefits decision arises under contract rather than tort law,

no matter what the state of mind of Defendants, *Colford,* 687 A.2d at 616, Plaintiff's Complaint asserts additional allegations. Specifically, Plaintiff contends that after he was diagnosed with a brain tumor, Defendants accused him of "malingering and of unethically trying to obtain benefits under the policy." Complaint ¶ 35. The Court cannot find, at this stage in the case, that those allegations are insufficient as a matter of law to state a claim for intentional infliction of emotional distress. The Court will, therefore, deny Defendants' Motion to Dismiss Count V.

### C. Count VI—Negligent Infliction of Emotional Distress

■ Defendants argue that the Court should dismiss Plaintiff's claim for negligent infliction of emotional distress because there are no tort damages for a breach of contract claim under Maine law and that Plaintiff does not allege facts establishing the "serious" emotional distress necessary to make out a claim for negligent infliction of emotional distress. It is not entirely true that Maine law does not recognize any emotional distress claim arising out of a breach of contract. Although this insurance contract is not one of the "special" contracts for which emotional distress is an obvious result of breach,[3] *Marquis v. Farm Family Mut. Ins. Co.,* 628 A.2d 644, 651 (Me.1993), Plaintiff may state a claim for emotional distress damages provided he alleges that he suffered an accompanying physical injury. Plaintiff has not alleged in his Complaint any physical injury resulting from Defendants' conduct. Plaintiff's claim for negligent infliction of emotional distress is not sufficient to withstand Defendants' Motion to Dismiss. The Court will, therefore, grant Defendants' Motion to Dismiss Count VI.

**3.** Some of these "special" contracts, breach of which will result in a serious emotional disturbance, are: contracts between carriers and innkeepers, contracts for the carriage or

### D. Count IV—Fraud

In Maine law, a defendant is liable for fraud if he:

(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

*Butler v. Poulin,* 500 A.2d 257, 260 (Me. 1985) (quoting *Letellier v. Small,* 400 A.2d 371, 376 (Me.1979)). Defendants assert that Plaintiff's Complaint alleges two acts of fraud: (1) representations made by Defendants when the policy was sold; and (2) representations made by Defendants when Plaintiff became disabled. The Court notes that the fraud claim as pled is broader than Defendants assert. Count IV also incorporates paragraphs one through twenty-five of Plaintiff's Complaint, where it is alleged, among other things, that Defendants' agent advised Plaintiff to continue to make premium payments while he was unemployed. Complaint ¶ 12. Thus, the Court will not confine its analysis to the two fraudulent acts Defendants glean from the Complaint.

A claim of fraud, Defendants contend, must be based on a misrepresentation of fact and either of the statements alleged to be fraudulent in the fraud section of Plaintiff's Complaint consist of an interpretation of the policy or conclusions about the legal effect of an insurance contract. *See Thompson v. Phoenix Ins. Co.,* 75 Me. 55 (1883). Plaintiff counters that the Law Court has adopted the Restatement (Second) of Torts section 525 definition of fraud, which states:

One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another

disposition of dead bodies, and contracts for the delivery of messages concerning death. *See Rubin v. Matthews Intern. Corp.,* 503 A.2d 694, 696 (Me.1986).

to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

■ Defendants are correct in its assertion that under Maine law a claim for fraud must be based on a misrepresentation of fact. Although the Law Court on a few occasions has cited to section 525 of the Restatement (Second) of Torts (1977) when discussing fraud claims, *see Boivin v. Jones & Vining,* 578 A.2d 187, 189 (Me. 1990); *Arbour v. Hazelton,* 534 A.2d 1303, 1305 (Me.1987); *Letellier,* 400 A.2d at 376 n. 3, it has never adopted the Restatement version of fraud for the purpose of expanding the scope of actionable fraud claims to opinion-based statements. Moreover, *Shine v. Dodge,* 130 Me. 440, 157 A. 318 (1931), where the Law Court first held that a misrepresentation of opinion is not actionable, has never been overruled. *See Coffin v. Dodge,* 146 Me. 3, 6, 76 A.2d 541, 543 (1950). This Court will not infer that *Shine* has been overruled *sub silentio* by the references to section 525 of the Restatement. However, there is a distinction between the "falsehood of stating one opinion when the speaker held another and putting a statement in the form of an opinion when the speaker had positive knowledge to the contrary, the latter being actionable." *Herrick v. State,* 159 Me. 499, 504 196 A.2d 101, 104 (1963).

■ The Court must now determine whether the fraud claim, as pled, rests on a misrepresentation of fact by Defendants. The distinction between fact and opinion is often a difficult one and the language of the representation alone does not necessarily decide the issue. *See Shine,* 130 Me. at 444, 157 A. at 318. The Law Court has stated that "[t]he relationship of the parties or the opportunity afforded for investigation and the reliance, which one is thereby justified in placing on the statement of the other, may transform into an averment of fact that which under ordinary circumstances would be merely an expression of opinion." *Boivin,* 578 A.2d at 188–89 (citing *Shine,* 130 Me. at 444, 157 A. 318 (citations omitted)); *see also Herrick,* 196 A.2d at 104. The Court cannot find at this stage in the proceedings that the allegations herein, could not state a claim for fraud based on a misrepresentation of fact.

■ Defendants also argue that Plaintiff's fraud claim should be dismissed because he fails to assert that the fraud on the part of Defendants' agent was intentional. Plaintiff responds that he has pled the fraud claim with the necessary specificity. When pleading fraud, the circumstances constituting fraud must be stated with particularity. Fed.R.Civ.P. 9(b); *Beck v. Sampson,* 158 Me. 502, 510, 186 A.2d 783, 788 (1962). Under modern pleading rules, the purpose of a complaint is to provide a defendant with notice of the claim or claims against him, and a motion to dismiss should be denied if the pleading alleges facts that would entitle the plaintiff to relief upon some theory or if it alleges every essential element of recovery. In this case, because Plaintiff alleges that Defendants' conduct involved fraud, the provisions of rule 9(b) must also be considered in addressing the motion to dismiss. Rule 9(b) provides that when a claim of fraud is made, "the circumstances constituting fraud ... shall be stated with particularity" although the "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). Applying these tenets to this case, the Court finds that Plaintiff's Complaint states a claim against Defendants for fraud. Although the word "intent" is not anywhere in the Complaint, Plaintiff does plainly allege that Defendants made two misrepresentations, on each occasion "with knowledge that it was false." Complaint ¶¶ 28, 32. Thus, Plaintiff has satisfied the general pleading requirement for the state-of-mind element of fraud.

### E. Count VII and Count IX— Bad Faith and Equitable Estoppel

Defendants contend that there is no recognized cause of action in Maine for the bad-faith breach of a duty. In *Marquis v. Farm Family Mutual Ins. Co.*, 628 A.2d at 652, the Law Court held, for the fast time, that "an independent tort of bad faith resulting from an insurer's breach of its duty to act in good faith and deal fairly with an insured" was not available under Maine law. Plaintiff counters by condensing the bad-faith and estoppel claims under the singular theory of equitable estoppel and not directly addressing the bad-faith claim.[4] Although it is not entirely clear what Plaintiff means to assert with respect to the bad-faith claim in the consolidated argument, the Court understands the Complaint as asserting an independent tort of bad faith. The law in this area being indisputable, the Court will dismiss Count VII.

Count IX alleges that because of New England's actions, it is equitably estopped from denying Plaintiff benefits under the policy. Defendants assert that equitable estoppel, like fraud, requires a misrepresentation of fact. Apparently referring to the Restatement § 525, Plaintiff responds that misstatements of law can also be actionable if made for the purpose of inducing behavior on the part of another. Notwithstanding the parties arguments, equitable estoppel is a defense, not a cause of action. In *Waterville Homes, Inc. v. Maine Department of Transportation*, 589 A.2d 455, 457 (Me.1991) (quoting *Dickerson v. Colgrove*, 100 U.S. 578, 581, 25 L.Ed. 618 (1879)), the Law Court reiterated the "well settled principle that estoppel is 'available only for protection, and cannot be used as a weapon of assault.'" The Court will thus dismiss Count IX— Plaintiff's equitable estoppel claim.

### F. Count VIII—Malicious Conduct

Defendants move to dismiss Count VIII on the ground that there is no cause of action for malicious conduct under Maine law. Plaintiff responds explaining that this a claim for punitive damages which is cognizable under Maine law as a remedy for certain types of tortious conduct. Punitive damages are permitted where the plaintiff proves by clear and convincing evidence that the defendant acted with malice. *Tuttle v. Raymond*, 494 A.2d 1353, 1354 (Me.1985). Actual malice exists where the defendant's conduct is motivated by ill will toward the plaintiff. In *Tuttle*, the Law Court established that punitive damages are also available "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of the conduct can be implied." *Id.* at 1361. Plaintiff alleges that New England's conduct was motivated by ill will, both express and implied. Complaint ¶¶ 47, 48. Because ill will is alleged and some of Plaintiff's tort claims have survived the Motion to Dismiss, the Court is unable to dismiss the claim for punitive damages.

### III. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendants New England Mutual Life Insurance Company and The New England's Motion to Dismiss be **DENIED** as to Counts IV, V, and VIII and **GRANTED** as to Counts III, VI, VII, and IX.

---

4. Plaintiff entitles this section in his brief "Plaintiff has adequately pled that New England is estopped to deny coverage due to its own bad faith or prior actions. [Counts VII & IX]."